(No. 91344.

*In re* DETENTION OF BRAD LIEBERMAN (The People of the State of Illinois, Appellant, v. Brad Lieberman, Appellee).

*Opinion filed July 3, 2002.—Rehearing denied August 29, 2002.*

James E. Ryan, Attorney General, of Springfield (Joel D. Bertocchi, Solicitor General, and William L. Browers and Lisa Anne Hoffman, Assistant Attorneys General, of Chicago, of counsel), for the People.

Thomas A. Reynolds III, Kimball R. Anderson, Brian D. Fergemann and Giel Stein, of Winston & Strawn, of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

In 1980, respondent, Brad Lieberman, was convicted of seven counts of rape. Ill. Rev. Stat. 1981, ch. 38, par. 11—1. In January 2000, the State filed a petition in the circuit court of Cook County alleging that respondent is a "sexually violent person" subject to involuntary civil

commitment pursuant to the Sexually Violent Persons Commitment Act (the Act or Commitment Act) (725 ILCS 207/1 *et seq.* (West 1998)). At issue in this appeal is whether respondent's 1980 convictions for the crime of rape constitute "sexually violent" offenses subjecting him to commitment as a "sexually violent person" under the version of the Commitment Act in effect at the time the State filed the petition at bar.[1] The circuit court of Cook County denied respondent's motion to dismiss the State's petition to commit him as a sexually violent person. The circuit court thereafter certified the following question for interlocutory appeal pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)): "Whether the Respondent's conviction for the crime of rape (Ill. Rev. Stat. Ch. 38 § 11—1) is a conviction of a sexually violent offense for purposes of a civil commitment of a 'sexually violent person' under the Sexually Violent Persons Commitment Act, 725 ILCS 207[/1] *et seq.*" The appellate court granted respondent's application for leave to file an interlocutory appeal. The appellate court answered the certified question in the negative, and reversed the judgment of the circuit court. 319 Ill. App. 3d 1020. For the reasons that follow, we reverse the judgment of the appellate court.

## BACKGROUND

In 1980, respondent was convicted in the circuit court of Cook County of six counts of rape (Ill. Rev. Stat. 1981, ch. 38, par. 11—1(a)) and one count of attempted rape. That same year, respondent was found guilty of one count of rape and one count of attempted rape in Lake County. Respondent was sentenced to a number of terms of

---

[1]Subsequent to the filing of the commitment petition at bar, the General Assembly amended section 5(e) of the Commitment Act by specifying that a "sexually violent offense" now includes the offense of rape. Pub. Act 91—875, eff. June 30, 2000. Our opinion today addresses the preamended version of section 5(e).

imprisonment to run concurrently, the longest of which required him to serve 40 years in prison.

Respondent was scheduled to be released from the Illinois Department of Corrections on January 9, 2000. On January 6, 2000, the State filed in the circuit court of Cook County a petition pursuant to section 15 of the Commitment Act (725 ILCS 207/15 (West 1998)) alleging that respondent is a "sexually violent person" within the meaning of section 5(f) of the Act (725 ILCS 207/5(f) (West 1998)) and therefore subject to involuntary civil commitment to the control, care and custody of the Department of Human Services. In support of this petition, the State alleged that in 1980 respondent was convicted of seven "sexually violent offenses" in Cook County and two "sexually violent offenses" in Lake County. The petition further alleged that respondent suffers from several mental disorders, including paraphilia and "sexually attracted to non-consenting females, non-exclusive type." The petition also alleged that respondent is subject to involuntary civil commitment under the Act because he is "dangerous to others" and that "his mental disorders create a substantial probability that he will engage in future acts of sexual violence."

Respondent filed a motion to dismiss the State's petition pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1998)). In his dismissal motion, respondent noted that the crime of rape was abolished by the General Assembly in 1984 as part of a comprehensive rewriting of this state's sex offense statutes. Respondent further observed that, under the version of section 5(e) of the Commitment Act (725 ILCS 205/5(e) (West 1998)) in effect at the time the State filed the petition at bar, a "[s]exually violent offense" for purposes of the Act was defined as criminal sexual assault (720 ILCS 5/12—13 (West 1998)), aggravated criminal sexual assault (720 ILCS 5/12—14 (West 1998)),

predatory criminal sexual assault of a child (720 ILCS 5/12—14.1 (West 1998)), and aggravated criminal sexual abuse (720 ILCS 5/12—16 (West 1998)). Respondent argued that because the crime of rape was not included in section 5(e)'s definition of a "sexually violent offense," the State's petition failed to allege a claim under the Act and warranted dismissal.

On February 1, 2000, the circuit court denied respondent's motion to dismiss. The circuit court judge found that the offense of criminal sexual assault "replaced rape" in the Criminal Code of 1961, and he regarded the two offenses "as basically the same." The circuit court judge further found that "the legislature did not spell out rape [in section 5(e) of the Commitment Act] because rape was not on the books. They did spell out criminal sexual assault which I believe incorporates rape." Therefore, the circuit court judge concluded, respondent's convictions for rape fell within section 5(e)'s definition of a "sexually violent offense" and respondent was subject to proceedings under the Commitment Act.

On February 9, 2000, the circuit court certified the following question for review, pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)): "Whether the Respondent's conviction for the crime of rape (Ill. Rev. Stat. Ch. 38 § 11—1) is a conviction of a sexually violent offense for the purpose of a civil commitment of a 'sexually violent person' under the Sexually Violent Persons Commitment Act, 725 ILCS 207[/1] et seq." The appellate court granted respondent's petition for leave to appeal.

The appellate court answered the certified question in the negative and reversed the judgment of the circuit court. 319 Ill. App. 3d 1020. The appellate court found that the version of section 5(e) of the Commitment Act in effect at the time the State's petition was filed did not include the now-abolished offense of rape within the

definition of "sexually violent offenses." Therefore, the appellate court concluded, a petition for involuntary commitment brought pursuant to the Act cannot be based upon a rape conviction. In addition, the appellate court rejected the argument advanced by the State that because the elements of the former offense of rape were "subsumed" into the subsequently enacted offenses of criminal and aggravated criminal sexual assault, respondent's convictions for rape were "sexually violent offenses" within the meaning of the Commitment Act. As a final matter, the appellate court ruled that the legislature's subsequent amendment to section 5(e) of the Act adding the offense of rape to the definition of a "sexually violent offense" (725 ILCS 207/5(e)(1.5) (West 2000)) supported its conclusion that the Act as originally drafted did not intend for rape to be included within the definition of a "sexually violent offense." We granted the State's petition for leave to appeal under our Rule 315 (177 Ill. 2d R. 315).

## ANALYSIS

We are asked in this appeal to determine whether a conviction for the crime of rape constitutes a "sexually violent offense" within the meaning of the version of the Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq.* (West 1998)) in effect at the time the State filed its petition in the circuit court. The issue before us is a matter of statutory construction. Accordingly, our review is *de novo* (*Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232 (2001)), and our inquiry is conducted within a familiar analytic framework.

It is well settled that the primary objective of this court in construing the meaning of a statute is to ascertain and give effect to the intention of the legislature. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04 (2000). All other rules of statutory construction are subordinate to this cardinal principle.

*Sylvester*, 197 Ill. 2d at 232; *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 387 (1998). We determine legislative intent by examining the language of the statute, which is "the most reliable indicator of the legislature's objectives in enacting a particular law." *Michigan Avenue National Bank*, 191 Ill. 2d at 504; see also *In re D.L.*, 191 Ill. 2d 1, 9 (2000); *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996). The statutory language is to be given its plain, ordinary and popularly understood meaning (*Union Electric Co. v. Department of Revenue*, 136 Ill. 2d 385, 397 (1990)), and we are to afford the statutory language the fullest, rather than narrowest, possible meaning to which it is susceptible (*Lake County Board of Review v. Property Tax Appeal Board*, 119 Ill. 2d 419, 423 (1988)).

Because all provisions of a statutory enactment are viewed as a whole (*Michigan Avenue National Bank*, 191 Ill. 2d at 504; *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 382 (1995)), words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute (*Sylvester*, 197 Ill. 2d at 232; *Michigan Avenue National Bank*, 191 Ill. 2d at 504). Each word, clause and sentence of the statute, if possible, must be given reasonable meaning and not rendered superfluous. *Sylvester*, 197 Ill. 2d at 232; *A.P. Properties, Inc. v. Goshinsky*, 186 Ill. 2d 524, 532 (1999). Accordingly, in determining the intent of the legislature, the court may properly consider not only the language of the statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved. *People v. Pullen*, 192 Ill. 2d 36, 42 (2000); *Stern v. Norwest Mortgage, Inc.*, 179 Ill. 2d 160, 164 (1997); *People v. Frieberg*, 147 Ill. 2d 326, 345 (1992). "Legislative intent can be ascertained from a consideration of the entire Act, its nature, its object and the consequences that would result from construing it one way or the other." *Fumarolo v. Chicago Board of*

*Education,* 142 Ill. 2d 54, 96 (1990); see also *People ex rel. Meyer v. Gerner,* 35 Ill. 2d 33, 39 (1966); *Carrigan v. Liquor Control Comm'n,* 19 Ill. 2d 230, 233 (1960). In construing a statute, we also presume that the General Assembly, in its enactment of legislation, did not intend absurdity, inconvenience or injustice. *Michigan Avenue National Bank,* 191 Ill. 2d at 504; *Harris v. Manor Healthcare Corp.,* 111 Ill. 2d 350, 362-63 (1986). "Statutes must be construed in the most beneficial way which their language will permit so as to prevent hardship or injustice, and to oppose prejudice to public interests." *Mulligan v. Joliet Regional Port District,* 123 Ill. 2d 303, 313 (1988); see also *Illinois National Bank v. Chegin,* 35 Ill. 2d 375, 378-79 (1966).

The Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq.* (West 1998)) took effect on January 1, 1998 (Pub. Act 90—40, eff. January 1, 1998). The Commitment Act applies to an individual who has been convicted of a "sexually violent offense" and who is nearing release or discharge from custody. Section 15 of the Act allows the State to petition the court for the civil detention of criminal offenders beyond their imposed periods of incarceration if the State can show that the offender satisfies the criteria of a "[s]exually violent person." 725 ILCS 207/15 (West 1998); see also *In re Detention of Samuelson,* 189 Ill. 2d 548, 553 (2000).

Pursuant to section 5(f) of the Commitment Act (725 ILCS 207/5(f) (West 1998)), a "[s]exually violent person" is defined as an individual who

"has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of a sexually violent offense by reason of insanity and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence."

Section 5(e) of the Commitment Act (725 ILCS 207/5(e)

(West 1998)) provides the definition for what is considered to be a "[s]exually violent offense" for purposes of the Act. At the time the State filed the instant petition against respondent, an offense was deemed to be "sexually violent" if it fell within any one of the three subsections of section 5(e). Because the State's petition at bar relies only upon the definition of a "[s]exually violent offense" contained in subsection (1) of section 5(e), our review is confined to this specific statutory provision. Pursuant to section 5(e)(1), a "[s]exually violent offense" is defined as "[a]ny crime specified in Section 12—13, 12—14, 12—14.1, or 12—16 of the Criminal Code of 1961." 725 ILCS 205/5(e)(1) (West 1998). Thus, under the applicable version of the statute, a "[s]exually violent offense" was defined by the General Assembly as criminal sexual assault (720 ILCS 5/12—13 (West 1998)), aggravated criminal sexual assault (720 ILCS 5/12—14 (West 1998)), predatory criminal sexual assault of a child (720 ILCS 5/12—14.1 (West 1998)), or aggravated criminal sexual abuse (720 ILCS 5/12—16 (West 1998)). See also *Samuelson*, 189 Ill. 2d at 552.

In the matter at bar, the State contends that the appellate court erred in holding that the General Assembly did not intend to include the former offense of rape within the definition of a "[s]exually violent offense" found in the version of the Commitment Act in effect at the time the State filed the commitment petition at bar. The State advances two arguments in support of its position that, although the offense of rape is not specifically included within the definition of a "[s]exually violent offense" under the applicable version of section 5(e)(1) of the Act, respondent is nevertheless subject to involuntary civil commitment proceedings under the Act. First, the State asserts that the General Assembly intended that the former offense of rape be "subsumed" into the subsequently enacted offenses of criminal and aggravated

criminal sexual assault. According to the State, because the conduct of respondent in his underlying rape convictions is precisely the type of conduct which is chargeable under the offenses of criminal and aggravated criminal sexual assault, it follows that the crime of rape is at the core of these subsequently enacted offenses. Therefore, the State reasons, respondent's convictions for rape are convictions for a "sexually violent offense" within the meaning of the Commitment Act and, accordingly, respondent is subject to proceedings under that Act. Second, the State argues that the legislature's subsequent amendment of section 5(e) of the Commitment Act to add the offense of rape and other abolished sex offenses within the definition of a "sexually violent offense" serves to clarify that the legislature originally intended that the crime of rape be considered a "sexually violent offense" for purposes of the Act. In sum, the State concludes, the appellate court's ruling that rape does not constitute a "sexually violent offense" within the meaning of the applicable version of the Commitment Act constitutes an absurd result which thwarts the General Assembly's intent in passing the Act, which is to authorize the State to file a petition to civilly commit violent recidivist sex offenders who pose a continuing threat to society.

Respondent counters that the plain language of the applicable version of section 5(e)(1) of the Commitment Act does not include the specific offense of rape within the definition of a "[s]exually violent offense." Relying upon the rule of statutory construction which provides that when a statute lists certain matters, those matters omitted were intended to be excluded (see 2A N. Singer, Sutherland on Statutory Construction § 47.23 (6th ed. 2000) (discussing the doctrine of *expressio unius est exclusio alterius*)), respondent argues that the absence of the former offense of rape from the definition of a

"[s]exually violent offense" in section 5(e)(1) of the Act gives rise to an inference that the legislature intended to exclude individuals convicted of rape from the Act's coverage. Thus, respondent concludes, because he was not convicted of a "sexually violent offense" within the meaning of section 5(e)(1), he does not come within the statutory definition of a "sexually violent person" contained within section 5(f) of the Act. Accordingly, respondent asserts that the State's petition fails to allege a claim under the Commitment Act. For the reasons set forth below, we disagree with respondent's interpretation of the Commitment Act.

As stated, in construing the meaning of a statute, the primary objective of this court is to ascertain and give effect to the legislature's intent. *Michigan Avenue National Bank*, 191 Ill. 2d at 503-04. All other rules of statutory construction are subordinate to this cardinal principle. *Sylvester*, 197 Ill. 2d at 232. To this end, in addition to considering the language of the statute, we may properly consider the reason and necessity for the law, the evils sought to be remedied by the law, and the purpose to be achieved by the enactment. *Pullen*, 192 Ill. 2d at 42; *Stern*, 179 Ill. 2d at 164. Indeed, " '[w]here the spirit and intent of the General Assembly in adopting an act are clearly expressed and its objects and purposes are clearly set forth, courts are not bound by the literal language of a particular clause which would defeat the obvious intent of the legislature.' " *People v. McCoy*, 63 Ill. 2d 40, 45 (1976), quoting *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Comm'n*, 42 Ill. 2d 385, 395 (1969).

In order to determine whether individuals, such as respondent, who were convicted of the now-repealed offense of rape are subject to civil commitment under the version of the Commitment Act in effect at the time the State filed the petition at bar, we must first address the

threshold question of whether the former offense of rape was subsumed into the subsequently enacted crimes of criminal and aggravated criminal sexual assault. In answering this question, we must discern the legislature's intent in repealing the offense of rape and enacting a new statutory scheme governing the prosecution of sex crimes.

In 1984, the General Assembly enacted Public Act 83—1067, more commonly known as the Criminal Sexual Assault Act (Pub. Act 83—1067, eff. July 1, 1984). The Criminal Sexual Assault Act repealed eight statutes which had defined sex offenses in sections 11—1 through 11—11.1 of the Criminal Code of 1961, including the offense of rape.[2] This court has previously observed that the Criminal Sexual Assault Act "recodif[ied] the sexual offenses into a comprehensive statute with uniform statutory elements that would criminalize all sexual assaults without distinguishing between the sex of the offender or the victim and the type of sexual act proscribed." *People v. Haywood*, 118 Ill. 2d 263, 271 (1987). To this end, the Criminal Sexual Assault Act replaced the repealed offenses with the newly created offenses of criminal sexual assault, aggravated criminal sexual assault, criminal sexual abuse, and aggravated criminal sexual abuse. See *Haywood*, 118 Ill. 2d at 271-72.

In its submissions to this court, the State contends that the legislature intended that the offenses of criminal

___

[2]Specifically, the Criminal Sexual Assault Act repealed the offenses of rape (Ill. Rev. Stat. 1983, ch. 38, par. 11—1), deviate sexual assault (Ill. Rev. Stat. 1983, ch. 38, par. 11—3), indecent liberties with a child (Ill. Rev. Stat. 1983, ch. 38, par. 11—4), aggravated indecent liberties with a child (Ill. Rev. Stat. 1983, ch. 38, par. 11—4.1), contributing to the sexual delinquency of a child (Ill. Rev. Stat. 1983, ch. 38, par. 11—5), aggravated incest (Ill. Rev. Stat. 1983, ch. 38, par. 11—10), incest (Ill. Rev. Stat. 1983, ch. 38, par. 11—11), and sexual abuse of a child by a family member (Ill. Rev. Stat. 1983, ch. 38, par. 11—11.1).

sexual assault and aggravated criminal sexual assault created by the Criminal Sexual Assault Act "subsume" the offense of rape. We agree. The intent of the General Assembly in passing House Bill 606, which became the Criminal Sexual Assault Act, is clearly set forth in the legislative debates. For example, Senator Netsch, the Senate sponsor of House Bill 606, stated that the overall purpose of rewriting the sex crimes statutes was "to take a hodgepodge of preexisting statutes and fit them into a consistent coherent whole which is a spectrum of sex offenses *** [and] create[ ] one comprehensive law that reflects the fact that rape encompasses all types of sexual assault committed by both sexes against victims of both sexes and all ages." 83d Ill. Gen. Assem., Senate Proceedings, June 27, 1983, at 351-52 (statements of Senator Netsch); see also 83d Ill. Gen. Assem., House Proceedings, May 10, 1983, at 163 (statements of Representative Jaffe) (because the offense of rape "encompasses all types of sexual assault," the legislature drafted House Bill 606 with the intent of repealing the "narrow" rape statute and "creat[ing] one comprehensive law").

Senator Netsch explained that by enacting House Bill 606, the legislature intended to "increase convictions of sex offenders," and observed that "for the first time we have done what virtually every other state has done and what most prosecutors have asked us to do, and that is to create several levels of gradations, if you will, of what has been traditionally called rape. The point is not, and I emphasize, is not to make the conviction of sex offenders less easy. It is to increase it and make it more likely." 83d Ill. Gen. Assem., Senate Proceedings, June 27, 1983, at 352-53 (statements of Senator Netsch); see also 83d Ill. Gen. Assem., House Proceedings, May 10, 1983, at 163 (statements of Representative Jaffe) (the purpose of House Bill 606 is to "increase convictions of sex offenders by creating uniform statutory elements").

During the legislative debates, it was noted that House Bill 606 "removes the word 'rape' entirely from the Criminal Code and substitutes *** the phrase 'criminal sexual assault.' " 83d Ill. Gen. Assem., Senate Proceedings, June 27, 1983, at 355 (statements of Senator Bloom). Senator Netsch explained that by repealing the offense of rape, House Bill 606 intended to "close[ ] a number of gaps in the spectrum of sex offenses *** [by] recogniz[ing] that there is a large spectrum of sex offenses which have not been effectively covered in the past [under the crime of rape] and which should be effectively covered." 83d Ill. Gen. Assem., Senate Proceedings, July 1, 1983, at 101 (statements of Senator Netsch). Senator Netsch also stressed that "[a]lthough the term 'rape' is no longer in this bill as a legal term of art, rape will remain a part of our language *** because it is a generic term which does include all of the victims of sex crimes." 83d Ill. Gen. Assem., Senate Proceedings, November 2, 1983, at 13 (statements of Senator Netsch).

The legislative history of the Criminal Sexual Assault Act reveals that, although the word "rape" was removed from the Criminal Code of 1961, the General Assembly intended that the core concepts of the offense of rape animate the redrafted statute. Our conclusion that the offense of rape was subsumed by the subsequently created offenses of criminal and aggravated criminal sexual assault finds additional support in a comparison of the elements of the former offense of rape with the elements of criminal and aggravated criminal sexual assault. This comparison reveals that the Criminal Sexual Assault Act broadened the scope of sexual conduct deemed criminal. For example, prior to its repeal, section 11—1(a) of the Criminal Code of 1961 provided that the offense of rape was committed when "[a] male person of the age of 14 years and upwards *** has sexual intercourse with a female, not his wife, by force and against her will." Ill.

Rev. Stat. 1983, ch. 38, par. 11—1(a). Subsection (b) of section 11—1 defined "[s]exual intercourse" as "any penetration of the female sex organ by the male sex organ." Ill. Rev. Stat. 1983, ch. 38, par. 11—1(b).

In contrast to the offense of rape, which could be charged only where the offender was male and the victim was female, the subsequently enacted offenses of criminal and aggravated criminal sexual assault use gender neutral language, thereby widening the range of these offenses. Compare Ill. Rev. Stat. 1983, ch. 38, par. 11—1(a), with 720 ILCS 5/12—13, 12—14 (West 1998). In addition, although the offense of rape focused on the victim's state of mind and required a showing by the prosecutor that the crime was committed against the victim's will, the offenses of criminal and aggravated criminal sexual assault do not require evidence of the state of mind of the victim. Compare Ill. Rev. Stat. 1983, ch. 38, par. 11—1(a), with 720 ILCS 5/12—13, 12—14 (West 1998). Furthermore, an individual may charge his or her spouse with the offenses of criminal and aggravated criminal sexual assault, whereas the offense of rape could only be committed by a male against a female who was not his wife. Compare Ill. Rev. Stat. 1983, ch. 38, par. 11—1(a), with 720 ILCS 5/12—12(g), 12—13(a) (West 1998). Finally, the Criminal Sexual Assault Act also broadened several of the definitions relating to sexual crimes. For example, the definition of "penetration" under the repealed rape statute was limited to the penetration of the female sex organ by the male sex organ. In contrast, the subsequently enacted criminal sexual assault statute defines "penetration" far more broadly as "any contact, however slight," and "any intrusion, however slight." Compare Ill. Rev. Stat. 1983, ch. 38, par. 11—1(b), with 720 ILCS 5/12—12(f) (West 1998).

The above comparisons reveal that the conduct underlying respondent's rape convictions would have

also subjected respondent to charges under the subsequently enacted criminal sexual assault statutes. As set forth above, the legislature, acknowledging that rape encompasses all types of sexual assault, redrafted the sex crimes laws in order to create a comprehensive statute which recognizes several gradations of conduct traditionally considered "rape." The legislative debates show that the redrafting of these laws was intended to address the reality that "[t]he Illinois Sex crimes statutes, had, over time, become overly cumbersome, unduly restrictive, and archaic" (A. Jaffe & R. Becker, *Four New Basic Sex Offenses: A Fundamental Shift in Emphasis*, 72 Ill. B.J. 400, 400 (1984)), that a wholesale revision was necessary to "create statutes which reflected[ed] information learned in past decades about the nature of sexual assault" (83d Ill. Gen. Assem., House Proceedings, May 10, 1983, at 162 (statements of Representative Jaffe)), and that the revised statutes were intended to increase the number of sex-crime convictions. To this end, not only have the subsequently enacted sex offenses been framed in terms broader than those found in the former offense of rape, the new offenses are also defined in terms of the behavior of the offender rather than the state of mind of the victim. We conclude that in creating the offenses of criminal and aggravated criminal sexual assault, the General Assembly intended that the elements of the former offense of rape be subsumed into these new offenses.

Having found that the former offense of rape stands at the core of the offenses of criminal and aggravated criminal sexual assault, we turn to the question of whether a conviction for rape falls within the definition of a "[s]exually violent offense" under the applicable version of the Commitment Act. We conclude that because section 5(e)(1) of the Commitment Act defines the offenses of criminal and aggravated criminal sexual assault

as "[s]exually violent offense[s]," and because the former offense of rape is subsumed into criminal and aggravated criminal sexual assault, it follows that a conviction for the crime of rape constitutes a "sexually violent offense" under the applicable version of the Commitment Act.

Our conclusion is supported by a review of the legislative debates with respect to Senate Bill 6, which ultimately was enacted as the Commitment Act (Pub. Act 90—40, eff. January 1, 1998). Representative Dart, the House sponsor of Senate Bill 6, explained that the intent of the General Assembly in passing this legislation was to "keep our streets in our community safe from individuals who pose an ongoing threat to our children and to adults, as well. This is an attempt to reach out and to ensure that these people, who we know are predators, who are going to prey on our children and on adults in our community, frankly, are not going to be out there and that we are going to ensure that our streets are more safe." 90th Ill. Gen. Assem., House Proceedings, May 15, 1997, at 167 (statements of Representative Dart). Similarly, the Senate sponsor of Senate Bill 6, Senator Radogno, stated that the legislature intended that the Commitment Act "allow for the civil commitment at the conclusion of a criminal sentence of persons determined by a court to be in continuing danger of committing sex crimes" (90th Ill. Gen. Assem., Senate Proceedings, March 18, 1997, at 30 (statements of Senator Radogno)), that this law be used against those who "tend to be repeat offenders" (90th Ill. Gen. Assem., Senate Proceedings, March 18, 1997, at 30 (statements of Senator Radogno)), and that under this Act, "the worst of the worst, in terms of sex offenders, will be kept off the streets" (90th Ill. Gen. Assem., Senate Proceedings, May 21, 1997, at 24 (statements of Senator Radogno)).

To give the Commitment Act the construction that respondent seeks would be to deny effect to the legisla-

ture's clearly expressed intent in enacting this law: to keep our communities safe from predatory sex offenders who pose an ongoing threat to our citizens. Although respondent relies upon the rule of statutory construction that items omitted from a list are intended by the legislature as exclusions from that list, we observe that the rule of *expressio unius est exclusio alterius* "is a rule of statutory construction and not a rule of law," and it is "subordinate to the primary rule that the legislative intent governs the interpretation of the statute. Thus, it can be overcome by a strong indication of contrary legislative intent or policy." 2A N. Singer, Sutherland on Statutory Construction § 47.23, at 315 (6th ed. 2000).

In light of the clearly expressed intent of the General Assembly in enacting the Commitment Act, we do not believe that the legislature intended to exempt the crime of rape from the definition of a "sexually violent offense." Respondent's proposed construction of the statute would be an unwarranted triumph of form over substance, defeating the very purpose for which the statute was enacted. Indeed, this court has previously cautioned that " '[w]hen the literal enforcement of a statute would result in great injustice and lead to consequences which the legislature could not have contemplated, the courts are bound to presume that such consequences were not intended and will adopt a construction which it may be reasonable to presume was contemplated by the legislature.' " *People ex rel. Cason v. Ring*, 41 Ill. 2d 305, 312-13 (1968), quoting *Village of Glencoe v. Hurford*, 317 Ill. 203, 220 (1925).

In the matter at bar, respondent's proposed interpretation of section 5(e)(1) of the Commitment Act leads to absurd consequences which the legislature could not have contemplated: an entire class of violent sex offenders would be excluded from the application of a statute intended to prevent the return of violent recidivist sexual

offenders to our streets. Because such an interpretation of section 5(e)(1) leads to absurd results and prejudices the public interest in keeping citizens safe from violent sexual offenders, this interpretation is rejected.

Accordingly, we hold that the General Assembly intended to include the former crime of rape within the definition of a "[s]exually violent offense" found in section 5(e)(1) of the applicable version of the Commitment Act. We conclude that the legislature's omission of the now-repealed offense of rape from this definition was purely inadvertent and constituted a situation "where a legislative intention, otherwise clear, was in part mistakenly or inaccurately stated." *Gill v. Miller*, 94 Ill. 2d 52, 58 (1983). "[C]ourts must construe the acts to reflect the obvious intent of the legislature even if the words of a particular section must be read as modified or altered so as to comport with the legislative intent." *Ring*, 41 Ill. 2d at 313; see also *Gill*, 94 Ill. 2d at 59 (observing that "this court has decided that where applying language literally in a clause of an otherwise coherent statute would frustrate the spirit of the statute and the intent of the legislature, language may be disregarded, modified or supplied to give effect to the legislative design"). We stress, however, that "this technique of construction is to be exercised with caution" (*Gill*, 94 Ill. 2d at 58), and its application is limited to those exceptional situations where, such as in the matter at bar, adherence to the literal language of the statute would produce a result that is clearly and demonstrably at odds with the intent of the General Assembly.

Our conclusion that the General Assembly intended to include the former offense of rape within the Commitment Act's definition of a "sexually violent offense" is further supported by the legislature's subsequent amendment of section 5(e) of the Act. A subsequent amendment to a statute may be an appropriate source for

discerning legislative intent. *People v. Parker*, 123 Ill. 2d 204, 211 (1988); *Carey v. Elrod*, 49 Ill. 2d 464, 472 (1971). In Public Act 91—875, effective June 30, 2000, the General Assembly expanded the list of "sexually violent" offenses by adding a new subsection (1.5) to section 5(e) of the Commitment Act. Section 5(e)(1.5) provides that a "sexually violent offense" includes "[a]ny former law of this State specified in Section 11—1 (rape), 11—3 (deviate sexual assault), 11—4 (indecent liberties with a child) or 11—4[.1] (aggravated indecent liberties with a child) of the Criminal Code of 1961." 725 ILCS 207/5(e)(1.5) (West 2000).[3]

Respondent contends that the amendment to section 5(e) of the Act, accomplished by Public Act 91—875, made a substantial change to the law and was not, as the State contends, simply a "clarification" of the General Assembly's intent that the former offense of rape was to be included within the definition of a "sexually violent offense" in the original version of the Commitment Act. We disagree with respondent's assertions.

Although respondent is correct in arguing that an amendatory change in the language of a statute creates a presumption that it was intended to change the law as it theretofore existed, this court has previously held that " 'the presumption is not controlling [citations] and may be overcome by other considerations.' " *Parker*, 123 Ill. 2d at 211, quoting *People v. Nunn*, 77 Ill. 2d 243, 248 (1979). We explained in *Parker* that, although the amendment of an unambiguous statute usually indicates a purpose to change the law, "[t]he circumstances surrounding the amendment should be considered and: 'If

---

[3]We note that the amendment to the Commitment Act does not apply to respondent. A statutory amendment cannot be given retroactive effect in the absence of a clear expression of legislative intent to do so. *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 38-39 (2001).

they indicate that the legislature intended only to interpret the original act, the presumption of an intention to change the law is rebutted.' " *Parker*, 123 Ill. 2d at 211, quoting *People v. Youngbey*, 82 Ill. 2d 556, 563 (1980); see also 1A N. Singer, Sutherland on Statutory Construction § 22.30, at 366, 374 (6th ed. 2000) ("Although generally, a statutory amendment is presumed to have been intended to change the law, the legislative history may indicate that the amendment was intended instead as a clarification. *** [In addition, the] time and circumstances surrounding the enactment of the amendment may indicate that the change wrought by the amendment was formal only—that the legislature intended merely to interpret the original act"). Under such circumstances, "[w]e do not believe that the legislature should be precluded from later clarifying an already unambiguous law to confirm its earlier intent, without being held to have thereby intended to change the law." *Parker*, 123 Ill. 2d at 212.

A review of the legislative debate with respect to House Bill 4116 (which became Public Act 91—875) reveals that the intent of the General Assembly in amending the Commitment Act was to "include[ ] in the definition of a 'sexually violent offense' the former crimes of rape, deviate sexual assault, indecent liberties with a child or aggravated indecent liberties with a child," because "[t]hese provisions were overlooked previously." 91st Ill. Gen. Assem., Senate Proceedings, April 7, 2000, at 64 (statements of Senator Cronin). In addition, during the legislative debates, House Bill 4116 was characterized by Representative Turner, the House sponsor of this legislation, as "cleanup language *** given to us by the Attorney General" (91st Ill. Gen. Assem., House Proceedings, March 3, 2000, at 192 (statements of Representative Turner)), apparently in response to arguments, such as that raised at bar, that individuals convicted of rape did not fall within the purview of the Commitment Act.

We conclude that the amendment to section 5(e) of the Commitment Act accomplished by Public Act 91—875 was intended as a clarification of existing law and not as a change in the law. The use of the terms "cleanup language" and "overlooked" indicate that the amendment was introduced to make it clear that several repealed sex offenses, including the former offense of rape, were originally intended to be included within the Commitment Act's definition of a "sexually violent offense." The particular circumstances at bar indicate that the legislature did not overlook the fact that the now-repealed crime of rape is an appropriate underlying offense for civil commitment under the Act. Instead, the specific facts in the instant case indicate that the legislature overlooked the need to make specific reference to the former offense of rape in light of the fact that the offenses of criminal and aggravated criminal sexual assault, which subsumed the crime of rape, are specifically listed in the Commitment Act as "sexually violent offenses." In addition, the General Assembly, when made aware of the argument that the former offense rape was expressly included within the Act's definition of a "sexually violent offense," amended the statute to clarify its original intent. "An amendment, which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute." 1A N. Singer, Sutherland on Statutory Construction § 22.31, at 379-80 (6th ed. 2000); see also *Gill*, 94 Ill. 2d at 58. Accordingly, we conclude that the amendment to the Commitment Act was intended as a clarification of existing law.

In sum, we find that the definition of a "sexually violent offense" set forth in the version of section 5(e)(1) of the Commitment Act in effect at the time the State

filed the petition at bar includes the offense of rape. Because respondent was convicted of a "sexually violent offense" within the meaning of the Commitment Act, he satisfied the definition of a "sexually violent person" contained in section 5(f) of the Commitment Act. Accordingly, the appellate court erred in reversing the circuit court's judgment denying respondent's motion to dismiss the State's commitment petition.

### CONCLUSION

For the reasons set forth above, the judgment of the appellate court is reversed. We remand this cause to the circuit court of Cook County for further proceedings consistent with this opinion. We stress, however, that our decision today expresses no opinion with respect to the sufficiency of the State's commitment petition.

*Reversed and remanded.*

JUSTICE FITZGERALD took no part in the consideration or decision of this opinion.