*In re* ROBERT R., Alleged to be a Person Subject to Involuntary Administration of Psychotropic Medication (The People of the State of Illinois, Petitioner-Appellee, v. Robert R., Respondent-Appellant).

Fifth District No. 5—01—0814

Opinion filed March 26, 2003.

Anthony E. Rothert, Elvis C. Cameron, and Jeff M. Plesko, all of Guardianship and Advocacy Commission, of Alton, for appellant.

William Haine, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Kevin D. Sweeney, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

This is an appeal from two separate orders of the circuit court for the involuntary administration of psychotropic medications to Robert R. (respondent). Respondent filed a timely *pro se* notice of appeal after each of the court's orders, and we have consolidated the appeals for the purposes of this decision. The issues for review are (1) whether the circuit court erred in proceeding in respondent's absence at the first hearing and (2) whether the court erred in ordering the involuntary administration of psychotropic medication requested in the second petition, when a predispositional report had not been filed. We affirm.

## I. BACKGROUND

On August 23, 2001, respondent was transferred to the Alton Mental Health Center from the Peoria County jail after being found unfit to stand trial for aggravated battery. On September 4, 2001, Dr. Jagannath Patil of the Alton Mental Health Center filed a petition with the court. The petition alleged that respondent was a person subject to the involuntary administration of psychotropic medication pursuant to section 2—107.1 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2—107.1 (West Supp. 2001)). In the petition, Dr. Patil alleged that respondent had refused to take psychotropic medications while he was in jail and continued to refuse such medication while at the mental health center because of illogical or irrational reasoning and delusional beliefs.

On September 6, 2001, a hearing on the petition was held in a courtroom within the Alton Mental Health Center. However, respondent, a patient at the mental health center, did not appear in the courtroom. Respondent's attorney advised the court that, though respondent wanted to attend the hearing, he did not wish to be placed in restraints to be moved from the building where he was housed to the building in which the hearing was to be held. Respondent's attorney, relying upon section 3—806 of the Code (405 ILCS 5/3—806 (West 2000)), requested that the proceedings be moved to a courtroom located within the unit where respondent was located. The court denied the request and found that the holding of proceedings at the mental health center was sufficient to accommodate respondent. The hearing then began, without counsel waiving respondent's presence. The court found respondent to be a person subject to the involuntary administration of psychotropic medication. Respondent filed a timely *pro se* appeal.

On November 26, 2001, Dr. Patil filed another petition seeking the involuntary administration of psychotropic medication. On November 29, 2001, a hearing attended by respondent and his counsel was held. Dr. Patil testified as the State's only witness.

Dr. Patil testified that he was respondent's treating psychiatrist and that he had diagnosed him as suffering from schizo-affective disorder, bipolar type. Dr. Patil testified that, as a result of this diagnosis, respondent exhibits delusional, disorganized thinking and aggressive behaviors. Dr. Patil testified that at the time of the testimony respondent was on medication and that some of his symptoms had improved. However, respondent continued to exhibit delusional paranoia and bizarre thinking. Dr. Patil stated that psychotropic medication is a necessary part of respondent's treatment, and he asked that the court approve specific dosages of risperidone and Depakote with alternating medications of Clozaril, Haldol, and Ativan. These medications, he testified, would help rid respondent of his delusional beliefs and stabilize his psychiatric condition, improving his ability to interact with others and to benefit from counseling, leading to his possible fitness to stand trial. In assessing whether respondent had any conditions that would put him at an extraordinary, serious risk of harm from any of the recommended medications, Dr. Patil noted that respondent had previously suffered a myocardial infarct that would require a workup EKG by a cardiologist before Clozaril could be administered to respondent.

At the close of the evidence, respondent's attorney argued that the State had not proven that less restrictive treatment options had been explored and found inappropriate. Respondent's attorney contended that, in the absence of a predispositional report pursuant to section 3—810 of the Code (405 ILCS 5/3—810 (West 2000)), it was impossible for the State to have proven that less restrictive treatment options had been explored and found inappropriate. The State responded by noting that there had been specific testimony elicited on the issue of less restrictive treatment services and no contrary evidence. The State conceded that there had not been a predispositional report prepared.

The court found that respondent was a person subject to the involuntary administration of the psychotropic medications requested, with the exception of Clozaril. Respondent filed a timely *pro se* appeal.

## II. ANALYSIS

Respondent first argues that he was denied an opportunity to be heard when the court refused to accommodate his attorney's request to move the location of the hearing and then proceeded in respondent's absence. We disagree.

At the onset of the hearing on September 6, 2001, respondent's attorney informed the court that respondent originally wanted to come to court but had not understood that he would have to be restrained. Further, respondent had apparently misunderstood that the hearing was to be held in a building different from the one in which he was being housed. Respondent's attorney then requested that the hearing be moved to the forensic unit of the Alton Mental Health Center, where respondent was housed. In support of this request, respondent's attorney cited to section 3—806(b) of the Code, which states in part, "The court shall make reasonable accommodation of any request by the recipient's attorney concerning the location of the hearing" (405 ILCS 5/3—806(b) (West 2000)).

The court, however, denied the request, pointing out that it had already made reasonable accommodations and noting further that a move to the forensic unit would raise security concerns involving court and hospital personnel. The court further emphasized the impracticality of holding a hearing wherever a patient wished it to be held. After the court had denied the request to move the hearing, respondent's attorney informed the court that he did not have authority to waive respondent's right to be present at the hearing. The court asked the State whether it wanted to lay a foundation to explain why respondent was not present. The State called Theresa Mitchell, a licensed clinical social worker employed at the Alton Mental Health Center.

Mitchell testified that she worked in the forensic unit where respondent was a patient. On the morning of the hearing, the nursing staff informed her that respondent had stated that he wanted to go to court but was agitated because he did not want to have any security devices on. Mitchell testified that, as a forensic patient at the Alton Mental Health Center, respondent was required to be secured with shackles before he could move from building to building. She testified that when she discussed the matter with him, respondent became very agitated, telling Mitchell that he did not want to go to court if he had to wear restraining devices. Mitchell said she believed that respondent would have become even more agitated, possibly to the point of becoming a danger to himself and others, if he were physically restrained and brought to court under protest.

On the cross-examination of Mitchell, respondent's attorney inquired about the existence of a courtroom in the unit in which respondent was being held:

"Q. All right. And is there a state seal and courtroom type area in the forensic unit in the front?

A. We have a conference room, but it's never been used as a courtroom to my knowledge.

Q. In the visitors' area in the front where the state seal is above the bench? Do you know where I'm talking about? Is there a visitors' room?

A. Yeah, we have a visitors' room.

Q. And do people have to wear restraints when they go there?

A. Well, no, but they have to be—we have to believe they're behaviorally stable before we'll let them off the treatment unit, and in my opinion [respondent] was not behaviorally stable this morning."

After hearing testimony from Mitchell, the court found that there was a substantial risk of physical harm to respondent if he were brought to court against his will. The court found that there was a need for orderly proceedings and that respondent's case had been set for that day. The court then proceeded on the petition.

■ Section 3—806 provides as follows:

"(a) The respondent shall be present at any hearing held under this Act unless his attorney waives his right to be present and the court is satisfied by a clear showing that the respondent's attendance would subject him to substantial risk of serious physical or emotional harm.

(b) The court shall make reasonable accommodation of any request by the recipient's attorney concerning the location of the hearing. If the recipient's attorney advises the court that the recipient refuses to attend, the hearing may proceed in his or her absence.

(c) No inference may be drawn from the recipient's non[ ]attendance pursuant to either subsection (a) or (b) of this Section." 405 ILCS 5/3—806 (West 2000).

On appeal, respondent argues that strict compliance with the Code's procedural safeguards is required to ensure that the mental health system does not become a tool to oppress, rather than to serve, society and that the circuit court did not have discretion to deny his counsel's reasonable request. While we agree with respondent that the clear language of section 3—806(b) mandates that the court make a *reasonable* accommodation of any request concerning the location of the hearing, it does not follow that every accommodation requested is *reasonable*. Accordingly, the circuit court is charged with determining the reasonableness of any such requests made under this provision.

■ In making the determination, one factor the court considered was whether the security of court and hospital personnel would be compromised if the proceedings were to be moved from the customary courtroom to a room characterized as a "visiting room" in a nearby building. The court further expressed concern that such an accommodation would result in future requests to move hearings from build-

ing to building and room to room within the facility, thereby burdening the court. We find these concerns reasonable and agree with the court's finding that it had already reasonably accommodated respondent. We find that the court did not abuse its discretion by denying his further request.

■ In arguing that the court improperly waived his presence at the hearing, respondent relies upon section 3—806(a)'s requirement that a "respondent shall be present at any hearing *** unless his attorney waives his right to be present and the court is satisfied by a clear showing that the respondent's attendance would subject him to substantial risk of serious physical or emotional harm." 405 ILCS 5/3—806(a) (West 2000). Respondent pointed out that, although the court found that his attendance at the hearing would have caused substantial risk of harm, his attorney did not waive his right to be present as required under this provision.

However, an express waiver of respondent's presence at the hearing by his attorney was not necessary in this case, because counsel for respondent had already informed the court that respondent refused to attend the hearing at the noticed location, allowing the hearing to proceed in respondent's absence pursuant to section 3—806(b). Theresa Mitchell's testimony verified respondent's refusal to attend and indicated that respondent's refusal was voluntary and knowing. The satisfaction of the requirements of section 3—806(a), upon which respondent now relies, was unnecessary for the court to proceed in respondent's absence in this case. Thus, the court's decision to proceed on the petition without respondent present was not error.

■ Next, respondent argues that the court erred in finding that he was a person subject to the involuntary administration of psychotropic medication because the State failed to submit a predispositional report pursuant to section 3—810 of the Code. Section 3—810 of the Code provides as follows:

"Before disposition is determined, the facility director or such other person as the court may direct shall prepare a written report including information on the appropriateness and availability of alternative treatment settings, a social investigation of the respondent, a preliminary treatment plan, and any other information which the court may order. The treatment plan shall describe the respondent's problems and needs, the treatment goals, the proposed treatment methods, and a projected timetable for their attainment. If the respondent is found subject to involuntary admission, the court shall consider the report in determining an appropriate disposition." 405 ILCS 5/3—810 (West 2000).

Respondent notes that section 2—107.1 of the Code outlines the

standards by which involuntary treatment may be administered. 405 ILCS 5/2—107.1 (West Supp. 2001). Section 2—107.1(a—5)(3) requires the following: "Unless otherwise provided herein, the procedures set forth in Article VIII of Chapter 3 of [the Code], including the provisions regarding appointment of counsel, shall govern hearings held under this subsection (a—5)." 405 ILCS 5/2—107.1(a—5)(3) (West Supp. 2001). Respondent relies upon this language as support for his contention that the predispositional-report requirement of section 3—810 must be satisfied in any proceedings seeking court-authorized involuntary administration of psychotropic medication.

The State argues that a predispositional report is intended to be used only in drafting orders related to involuntary commitment proceedings and is not applicable to proceedings for the involuntary administration of psychotropic medication. The State points out that proceedings for involuntary commitment involve two separate hearings, one to determine if the respondent is subject to involuntary admission and another to determine how and where the respondent will be treated. The State asserts that the function of a predispositional report is to enable the circuit court to decide where a respondent will be confined and treated once it has found that the individual is a person subject to involuntary commitment. The State further contends that a predispositional report serves no purpose in proceedings for the involuntary administration of psychotropic medication because, in conducting those proceedings, the court is required to find only whether the administration of psychotropic medication or other forms of involuntary treatment should or should not be administered. These proceedings are therefore complete as soon as a finding has been entered, leaving nothing else to be considered.

■ The issue before us is one of statutory construction—whether section 3—810 of the Code applies to proceedings on petitions for the involuntary administration of psychotropic medication. "The primary rule of statutory construction is to ascertain and give effect to the legislature's intent." *People v. Ellis*, 199 Ill. 2d 28, 39, 765 N.E.2d 991, 997 (2002). In determining legislative intent, we must first look to the statute's language, giving the language its plain and commonly understood meaning. *Ellis*, 199 Ill. 2d at 39, 765 N.E.2d at 997. Additionally, we consider the reason and necessity of the statute, the problems sought to be remedied, and the purpose to be achieved. *In re Detention of Lieberman*, 201 Ill. 2d 300, 308, 776 N.E.2d 218, 223 (2002).

Ordinarily, we will not depart from a statute's plain language by reading into it exceptions, limitations, or conditions not expressed by our legislature (*Ellis*, 199 Ill. 2d at 39, 765 N.E.2d at 997); however,

we will presume that in enacting the statute the General Assembly did not intend absurdity, inconvenience, or injustice. *In re Detention of Lieberman*, 201 Ill. 2d at 309, 776 N.E.2d at 224. " ' "Where the spirit and intent of the General Assembly in adopting an act are clearly expressed and its objects and purposes are clearly set forth, courts are not bound by the literal language of a particular clause which would defeat the obvious intent of the legislature." ' [Citation.]" *In re Detention of Lieberman*, 201 Ill. 2d at 312, 776 N.E.2d at 225-26. In circumstances where adhering to the literal language of the statute would yield a result that is "clearly and demonstrably at odds with the intent of the General Assembly," we may disregard, modify, or supply language to give effect to the legislative design. *In re Detention of Lieberman*, 201 Ill. 2d at 320, 776 N.E.2d at 230.

■ The involuntary administration of psychotropic medications to an individual alleged to be mentally ill implicates substantial liberty interests. *In re C.E.*, 161 Ill. 2d 200, 213-17, 641 N.E.2d 345, 350-53 (1994). However, these liberty interests must be balanced against the State's legitimate interests in furthering the treatment of mentally ill individuals by forcibly administering psychotropic medication where an individual lacks the capacity to make reasoned decisions concerning his or her need for such medication. *In re C.E.*, 161 Ill. 2d at 217, 641 N.E.2d at 353. In 1991, the General Assembly enacted section 2—107.1 as a mechanism for determining when psychotropic medications may be administered over an individual's objections. *In re C.E.*, 161 Ill. 2d at 217, 641 N.E.2d at 353. Section 2—107.1 serves as a guide for balancing the liberty of the individual and the State's interest in treating its mentally ill citizens. *In re C.E.*, 161 Ill. 2d at 217, 641 N.E.2d at 353. Section 2—107.1 provides as follows:

"(4) Authorized involuntary treatment shall not be administered to the recipient unless it has been determined by clear and convincing evidence that all of the following factors are present:

(A) That the recipient has a serious mental illness or developmental disability.

(B) That because of said mental illness or developmental disability, the recipient exhibits any one of the following: (i) deterioration of his or her ability to function, (ii) suffering, or (iii) threatening behavior.

(C) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in item (B) of this subdivision (4) or the repeated episodic occurrence of these symptoms.

(D) That the benefits of the treatment outweigh the harm.

(E) That the recipient lacks the capacity to make a reasoned decision about the treatment.

(F) That other less restrictive services have been explored and found inappropriate.

(G) If the petition seeks authorization for testing and other procedures, that such testing and procedures are essential for the safe and effective administration of the treatment." 405 ILCS 5/2—107.1(a—5)(4) (West Supp. 2001).

As respondent has noted, section 2—107.1 also provides that the procedures set forth in article VIII of chapter 3 of the Code govern court hearings on petitions for the involuntary administration of psychotropic medication. 405 ILCS 5/2—107.1(a—5)(3) (West Supp. 2001). However, when first enacted in 1979, article VIII of chapter 3 addressed proceedings concerning the involuntary admission, transfer, or discharge of mentally ill individuals and did not address the involuntary administration of psychotropic medications. Ill. Rev. Stat. 1979, ch. 91½, pars. 3—800 through 3—819. Though many of the provisions in article VIII have since been held to apply to proceedings instituted under the more recently enacted section 2—107.1, requiring that a report be filed and considered before a disposition in cases where the involuntary administration of psychotropic medication is sought would interject an inconvenient and useless exercise into the proceedings.

As the State has noted, the findings a court is required to make before making an involuntary commitment differ from those required before the involuntary administration of psychotropic medication. In considering an involuntary admission petition, the court must first consider whether the respondent is a person who is (1) reasonably expected to inflict serious physical harm upon himself or herself or (2) is unable to provide for his or her basic physical needs so as to guard against serious harm. 405 ILCS 5/1—119 (West 2000). If the court finds either of these elements to be true, the court must then consider, among other things, available and appropriate facilities to treat the respondent. 405 ILCS 5/3—811 (West 2000) ("If any person is found subject to involuntary admission, the court shall consider alternative mental health facilities which are appropriate for and available to the respondent, including but not limited to hospitalization."). Further, the plain language of section 3—810 provides that only after a respondent has been determined to be a person subject to involuntary admission must the court then consider, in determining an appropriate disposition on the petition, a report on the appropriateness and availability of alternative treatment settings, a social investigation of the respondent, or a preliminary treatment plan.

■ The findings a court is required to make in considering a petition seeking the involuntary administration of psychotropic medication are significantly different from the bifurcated findings required

for petitions for involuntary admission. A petition seeking to involuntarily administer psychotropic medication to an individual requires the court to find only whether the individual is a person in need of such treatment. Once the factors outlined in section 2—107.1(a—5)(4) have been found to exist by clear and convincing evidence, the matter has been disposed of and the proceeding is complete. There is no secondary finding for the court to make.

■ We are unable to see what purpose a predispositional report would serve after a court has determined a respondent to be a person in need of involuntarily administered psychotropic medication. Further, we do not believe that the utility of a section 3—810 report is any more apparent if it were to be used by the court prior to ruling on the ultimate issue of whether an individual is subject to the involuntary administration of medication. The substance of the report either repeats those elements that the court is required to find by clear and convincing evidence or includes matters that are not necessary for a disposition. Accordingly, we cannot find that the legislature's provision that "the procedures set forth in Article VIII of Chapter 3 of [the Code] *** shall govern hearings held under [section 2—107.1]" was intended to work an absurd inconvenience upon proceedings involving petitions for the involuntary administration of psychotropic medication. Therefore, we hold that section 3—810 of the Code is not applicable to a petition to involuntarily administer psychotropic medication.

### III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

WELCH and GOLDENHERSH, JJ., concur.