*In re* M.A., a Person Found Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. M.A., Respondent-Appellant).

First District (4th Division)    No. 1—04—0166

Opinion filed March 31, 2005.

734

Illinois Guardianship and Advocacy Commission, Legal Advocacy Service, of Rockford (William J. Conroy, Jr., and Jeff M. Plesko, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle, and Thor Martin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINN delivered the opinion of the court:

Following a bench trial, the circuit court found respondent M.A. subject to continued involuntary admission under the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/1—100 et seq. (West 2002)) and ordered her to remain hospitalized. On appeal, respondent contends that the trial court erred by denying her motion for a bifurcated hearing and by admitting her predispositional report into evidence prior to determining whether she was a person subject to involuntary admission. We affirm.

At all relevant times, respondent was a patient in the Tinley Park Mental Health Center. A petition was filed on December 23, 2003, seeking the continued involuntary admission of respondent pursuant to section 3—813 of the Code (405 ILCS 5/3—813 (West 2002)). The petition alleged that respondent was mentally ill and a danger to herself and others.

William Johnston, a licensed clinical social worker, issued a certificate stating that in his opinion, respondent was mentally ill, a danger to herself and others, and unable to provide for her basic physical needs. Dr. Sunil Ballal, respondent's psychiatrist, also issued a certificate stating that in his opinion, respondent was mentally ill, paranoid, easily agitated, and delusional.

A hearing was scheduled based on the petition and two certificates. At the hearing, respondent's attorney verbally requested to bifurcate the proceedings, arguing that the trial court should first consider testimony regarding whether respondent is subject to involuntary admission and, if so, then consider testimony regarding the least restrictive means of treatment. Respondent's counsel argued bifurcation was necessary due to hearsay issues involved with documents that should not be reviewed until after the dispositional phase of the hearing was complete. The trial court denied respondent's motion and allowed the predispositional report to be admitted into evidence over respondent's objection.

Respondent does not contest the sufficiency of the evidence supporting her involuntary admission. In brief, at the hearing, Mary Montgomery, a registered nurse at Tinley Park Mental Health Center,

testified that while she was trying to administer medication, respondent hit her on the nose.

Dr. Ballal testified that respondent suffered from "chronic paranoid schizophrenia" and had been hospitalized six times in the past. In his opinion, respondent would be a danger to herself and others if discharged. Dr. Ballal stated that releasing respondent to her family was not possible because the family had refused to accept her.

Respondent, against her counsel's advice, testified that she wished to be discharged from the hospital. Respondent stated that she had been at the hospital six years, since November 1, 2000. When asked when she was last out of the hospital, respondent stated "I guess 2005."

The trial court found that respondent was a person subject to involuntary admission and ordered that she be hospitalized in the Department of Mental Health and Developmental Disabilities. The court noted that at one point during the hearing, it had thought a less restrictive alternative than hospitalization might be appropriate for respondent; however, the court found her statements at trial established that she was delusional and required continued involuntary admission and hospitalization.

On appeal, respondent contends that sections 3—810 and 3—811 of the Code (405 ILCS 5/3—810, 3—811 (West 2002)) required a bifurcated hearing process. Specifically, respondent argues that the trial court erred by not conducting two separate hearings, one to determine if respondent was a person subject to involuntary admission and another to determine how and where respondent would be treated. Further, respondent argues that the trial court erred by considering respondent's predisposition report prior to determining whether she was subject to involuntary admission. We disagree.

■ Section 3—810 of the Code, which applies to involuntary admissions, states:

> "*Before disposition is determined*, the facility director or such other person as the court may direct shall prepare a written report including information on the appropriateness and availability of alternative treatment settings, a social investigation of the respondent, a preliminary treatment plan, and any other information which the court may order. The treatment plan shall describe the respondent's problems and needs, the treatment goals, the proposed treatment methods, and a projected timetable for their attainment. If the respondent is found subject to involuntary admission, the court shall consider the report in determining an appropriate disposition." (Emphasis added.) 405 ILCS 5/3—810 (West 2002).

Section 3—811 of the Code, entitled "Involuntary admission; alternative mental health facilities," states in pertinent part: "If any person is found subject to involuntary admission, the court shall consider alternative mental health facilities which are appropriate for and available to the respondent, including but not limited to hospitalization." 405 ILCS 5/3—811 (West 2002).

■ Involuntary admission procedures implicate substantial liberty interests and, therefore, statutes governing the applicable procedures should be construed narrowly. *In re Michelle J.*, 209 Ill. 2d 428, 437 (2004). However, those interests "must be balanced against the dual objectives of involuntary admissions generally, which are to provide care for those who are unable to care for themselves, and to protect society from the dangerously mentally ill." *In re Robinson*, 151 Ill. 2d 126, 130-31 (1992). Procedural safeguards set forth in the Code are not mere technicalities. *In re Nancy A.*, 344 Ill. App. 3d 540, 549 (2003). Noncompliance with a statutorily prescribed involuntary commitment procedure renders the trial court's judgment erroneous and of no effect. *In re Nancy A.*, 344 Ill. App. 3d at 550; *In re Lanter*, 216 Ill. App. 3d 972, 974 (1991).

We will not rewrite a statute under the guise of statutory construction or depart from a statute's plain language by reading into it conditions, exceptions, or limitations not expressed by the legislature. *In re Michelle J.*, 209 Ill. 2d at 437. Statutory mandates cannot be compromised simply for the sake of administrative convenience. *In re Michelle J.*, 209 Ill. 2d at 436.

■ Neither the language of the Code nor case law requires a bifurcated hearing process. The language of sections 3—810 and 3—811 requires a trial court to make two findings, whether the respondent is subject to involuntary admission and, if so, where and how she should be treated. However, the language of the statute does not explicitly require a bifurcated hearing procedure to reach such a result (see 405 ILCS 5/3—810, 3—811 (West 2002)), and a court "cannot read words into a statute that are not there." *Chicago Tribune Co. v. Board of Education*, 332 Ill. App. 3d 60, 67 (2002).

■ Here, the trial court made two separate determinations as required by the Code: first, finding that respondent was a person subject to involuntary admission based on the evidence presented at the hearing; and second, finding that hospitalization was the appropriate treatment because of respondent's delusional state. The trial court's findings clearly establish that the purpose of the statutory requirements set forth in sections 3—810 and 3—811 of the Code were satisfied. See 405 ILCS 5/3—810, 3—811 (West 2002); *In re Robinson*, 151 Ill. 2d at 133. Therefore, the fact that the trial court made

the two separate determinations after conducting only one hearing did not violate the statutory requirements of the Code.

■ In *In re Robinson*, our supreme court addressed the appellant's argument that his involuntary admission proceedings were flawed because the circuit court did *not* consider a written predispositional report as required under section 3—810. The State argued that, while no written predispositional report had been prepared, the circuit court was able to consider the testimony of the State's expert witnesses, which amounted to substantial compliance with section 3—810. The supreme court held:

"It is clear from a reading of section 3—810 as a whole that its purpose is to provide trial judges certain information necessary for determining whether an individual is subject to involuntary admission to a mental health facility. Other purposes of the statute are to protect against unreasonable commitments and patient neglect, and to ensure adequate treatment for mental health care recipients." *In re Robinson*, 151 Ill. 2d at 133.

After considering the evidence presented at the involuntary admission proceeding, the supreme court held:

"We find that the testimony of the State's expert witness made reference to all of the information required in a predispositional report, and that, in the absence of an objection by the respondent, the purposes of section 3—810 were met in this case. Accordingly, the State's failure to present a formal predispositional report prepared by the facility director or someone directed to do so by the court is harmless error." *In re Robinson*, 151 Ill. 2d at 135.

*In re Robinson* makes it clear that the "report before disposition" provided for in section 3—810 is to be considered at the time when the circuit court is making its determination regarding whether a person is subject to involuntary admission. The last sentence of section 3—810 merely requires the circuit court to also consider the predispositional report when the court is determining the appropriate disposition of a respondent who has been found to be subject to involuntary admission. These "appropriate dispositions" are described in section 3—811.

*In re Lawrence S.*, 319 Ill. App. 3d 476 (2001), also considered the effect of a circuit court's failure to consider a predispositional report prepared pursuant to section 3—810. The court first noted that "[t]he complete failure to comply with section 3—810 of the Mental Health Code is reversible error." *In re Lawrence S.*, 319 Ill. App. 3d at 484, citing *In re Watts*, 250 Ill. App. 3d 723, 727 (1993). The court then rejected the State's argument that the testimony of the State's witnesses at the hearing contained the information required by section 3—810, as was found permissible in *In re Robinson*. The court reversed

the order involuntarily admitting the respondent, finding: "[t]here was simply no testimony about the appropriateness and availability of alternative treatment settings or about a treatment plan for respondent." *In re Lawrence S.*, 319 Ill. App. 3d at 484. See also *In re Robert H.*, 302 Ill. App. 3d 980, 989 (1999) (following *In re Robinson*, holding that the evidence presented at the dispositional hearing contained the information required by sections 3—810 and 3—811 of the Code).

The holdings in *In re Robinson, In re Lawrence S.* and *In re Robert H.* make it clear that section 3—810 requires trial courts to consider the information in the predispositional report prior to determining whether a respondent is subject to involuntary admission. Therefore, the trial court did not commit error by admitting into evidence and considering the predispositional report prior to determining if respondent was subject to involuntary admission.

Respondent relies on *In re Robert R.*, 338 Ill. App. 3d 343 (2003), to support her contention that sections 3—810 and 3—811 of the Code required a bifurcated hearing. In *In re Robert R.*, the court held that section 3—810 of the Code was inapplicable to involuntary administration of psychotropic medication cases. *In re Robert R.*, 338 Ill. App. 3d at 354. However, contrary to respondent's assertion, *In re Robert R.* does not stand for the proposition that a bifurcated hearing is required in involuntary admission cases. While the State in *In re Robert R.* argued that section 3—810 of the Code requires two separate hearings, the court merely concluded that section 3—810 of the Code did not apply because involuntary admission cases, unlike involuntary medication cases, require a trial court to make a "bifurcated finding[ ]" regarding admission and treatment. See *In re Robert R.*, 338 Ill. App. 3d at 353-54. The court did not specifically address whether a bifurcated hearing is necessary in order for the trial court to reach a proper determination under sections 3—810 and 3—811 of the Code. Therefore, the case does not support respondent's contention that a bifurcated hearing is statutorily required under sections 3—810 and 3—811 of the Code.

Respondent also relies on *In re Robert R.* to support her contention that a predispositional report may not be considered until after a person is found subject to involuntary admission. In *In re Robert R.*, the court noted that "the plain language of section 3—810 provides that only after a respondent has been determined to be a person subject to involuntary admission must the court then consider, in determining an appropriate disposition on the petition, a report on the appropriateness and availability of alternative treatment settings, a social investigation of the respondent, or a preliminary treatment plan." *In re Robert R.*, 338 Ill. App. 3d at 353. We note that this hold-

ing is *dicta*. In *In re Robert R.*, the court specifically held that section 3—810 did not apply to the issue before it, the involuntary admission of psychotropic medication to patients. *In re Robert R.*, 338 Ill. App. 3d at 354.

Further, the court in *In re Robert R.* did not cite any case supporting its reading of section 3—810, nor did it cite any case analogizing the language of section 3—810. As previously stated, the holdings in *In re Robinson, In re Lawrence S.* and *In re Robert H.* make it clear that section 3—810 actually requires trial courts to consider the information in the predispositional report prior to making a determination that a respondent is subject to involuntary admission. To the extent that the holding in *In re Robert R.* may be read to prohibit consideration of section 3—810's "report before disposition" prior to determining whether a respondent is subject to involuntary admission, we decline to follow it.

Accordingly, we find the trial court did not err in denying respondent's motion to bifurcate the proceedings and, further, did not err in considering respondent's predispositional report prior to determining whether she was a person subject to involuntary admission.

For the foregoing reasons, we affirm the circuit court's judgment.

Affirmed.

REID, P.J., and GREIMAN, J., concur.