Docket No. 109886.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ABRAHAM GARCIA, Appellee.

*Opinion filed January 21, 2011.*

CHIEF JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

The issue in this appeal is whether a defendant's wrongful delay of criminal proceedings by violating bond and becoming a fugitive from justice tolls the 10-year limitation on prior convictions used to impose an extended-term sentence under section 5–5–3.2(b)(1) of the Unified Code of Corrections (730 ILCS 5/5–5–3.2(b)(1) (West 1998)). The appellate court answered that question negatively, relying on the absence of statutory language specifically tolling the 10-year limit based on a defendant's wrongful delay. 396 Ill. App. 3d 792, 799. For the reasons that follow, we reverse the part of the appellate court's judgment construing the statute.

# I. BACKGROUND

In November 1999, the State charged defendant, Abraham Garcia, with attempted first degree murder and aggravated battery, alleging that defendant beat the victim following a minor traffic incident on August 31, 1999.

Pertinent to this appeal, the circuit court of Cook County released defendant on bond, but later issued a bond forfeiture warrant when defendant failed to appear. The warrant was quashed when defendant appeared at a subsequent hearing. Defendant again failed to appear at another hearing. Thus, in November 2000, the court issued a second bond forfeiture warrant. For the next six years, defendant remained a fugitive from justice. Defendant was not rearrested until November 2006.

In 2008, defendant was tried in a bench trial. The State presented evidence that the victim, Roberto Rios, and his wife were driving on a public road when they encountered defendant's vehicle stopped on the road, blocking Rios' passage. After waiting briefly, Rios honked his car horn at defendant's vehicle. Defendant exited his vehicle and approached Rios' car. Defendant argued with Rios and unsuccessfully tried to hit Rios through an open car window. Rios and his wife then drove to a nearby restaurant.

Shortly afterwards, defendant and another man entered the restaurant and attacked Rios. Defendant restrained Rios while the other man repeatedly hit Rios with a metal pipe. Rios eventually fell to the ground. While Rios was on the ground, defendant hit him in the head with a glass pitcher, breaking the pitcher. Defendant then cut Rios' face with pieces of broken glass. During the attack, Rios sustained a broken arm and serious permanent injuries to his face. Ultimately, the trial court convicted defendant of three counts of aggravated battery.

At the sentencing hearing, the parties agreed that defendant was eligible for an extended-term sentence based on his 1993 conviction for possession of a stolen motor vehicle. The trial court sentenced defendant to three extended 90-month prison terms, to be served concurrently.

Defendant filed a motion to reconsider his sentence, arguing that he was not eligible for an extended-term sentence under section

5–5–3.2(b)(1) of the Code because that section authorized an extended-term sentence based only on prior convictions within the previous 10 years, but his 1993 conviction for possession of a stolen motor vehicle occurred more than 10 years before his 2008 conviction in this case. The trial court denied defendant's motion to reconsider, finding that the statutory 10-year limit was tolled during the six years when defendant willfully violated his bail bond.

On appeal, the appellate court agreed with defendant's challenge to his extended-term sentence. The court recognized that section 5–5–3.2(b)(1) was intended to impose harsher sentences on offenders who had demonstrated their resistance to correction through repeated convictions but also noted, as a penal statute, it must be strictly construed in favor of the defendant. Observing that the statute contained no express tolling language, the court declined to toll the 10-year time limit when a defendant wrongfully delayed the criminal proceedings. 396 Ill. App. 3d at 798-99.

Accordingly, the appellate court determined that defendant was not eligible for an extended-term sentence when his 1993 conviction occurred more than 10 years before his 2008 conviction. Consequently, the court vacated as void the extended-term portion of his sentence, consisting of 2½ years. The court also remanded the cause to the trial court to vacate one of defendant's aggravated battery convictions under the one-act, one-crime doctrine. 396 Ill. App. 3d at 795-97.

We allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). The State challenges only the part of the appellate court's judgment on the extended-term sentence issue, and we thus limit our consideration in this case to that issue.


## II. ANALYSIS

The State argues the appellate court erred when it held that defendant's wrongful delay of criminal proceedings by becoming a fugitive from justice did not toll the 10-year limit on prior convictions used to impose an extended-term sentence under section 5–5–3.2(b)(1) of the Code. Acknowledging that the statute does not specifically toll the 10-year time limit when a defendant wrongfully delays proceedings, the State nonetheless contends that the appellate

court's construction of the statute was overly strict and directly conflicts with both legislative intent and well-established public policy prohibiting a criminal defendant from benefitting from his own wrongdoing.

We review *de novo* the State's claim because it presents a question of statutory construction. *People v. Tidwell*, 236 Ill. 2d 150, 156 (2010). When construing a statute, our fundamental objective is to ascertain and give effect to the legislature's intent, best indicated by the plain and ordinary meaning of the statutory language. *Tidwell,* 236 Ill. 2d at 157. A reviewing court may also consider the underlying purpose of the statute's enactment, the evils sought to be remedied, and the consequences of construing the statute in one manner versus another. *People ex rel. Birkett v. Dockery*, 235 Ill. 2d 73, 79 (2009). It is always presumed that the legislature did not intend to cause absurd, inconvenient, or unjust results. *People v. Lewis*, 234 Ill. 2d 32, 44 (2009).

Section 5–5–3.2(b)(1) of the Code allows for imposition of an extended-term sentence based on a defendant's prior conviction when:

> "[A] defendant is convicted of any felony, after having been previously convicted in Illinois or any other jurisdiction of the same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts[.]" 730 ILCS 5/5–5–3.2(b)(1) (West 1998).

Initially, we note that the legislature's intent underlying this provision is settled. As a recidivist statute, the goal of section 5–5–3.2(b)(1) "is to impose harsher sentences on offenders whose repeated convictions have shown their resistance to correction. [Citation.]" *People v. Robinson*, 89 Ill. 2d 469, 476 (1982); see also *People v. Lemons*, 191 Ill. 2d 155, 160 (2000) (citing *Robinson* for the legislative intent underlying section 5–5–3.2(b)(1)). Consistent with this purpose, the plain language of the statute authorizes an extended-term sentence based on a defendant's prior criminal conviction within the preceding 10 years, excluding time spent in custody. Although the language allows exclusion of time spent in custody, it does not refer to time spent as a result of a defendant's wrongful delay.

We find instructive our decision in *People v. Harden*, 113 Ill. 2d 14, 21 (1986). In *Harden*, we construed an earlier version of section 5–5–3.2(b)(1) to determine whether a prior federal conviction could serve as the basis for imposition of an extended-term sentence. The version of the statute in *Harden* did not specifically reference a federal conviction. Instead, the statutory language allowed imposition of an extended-term sentence " '[w]hen a defendant is convicted of any felony, after having been previously *convicted in Illinois* of the same or greater class felony, within 10 years, excluding time spent in custody.' " (Emphasis in original.) *Harden*, 113 Ill. 2d at 21 (quoting Ill. Rev. Stat. 1981, ch. 38, par. 1005–5–3.2(b)(1)). In other words, the statute was silent on the issue of whether it applied to a prior federal conviction.

While noting that the statutory language did not reference federal convictions, we also observed that the statute did not confine its application only to Illinois convictions. To resolve the issue, we focused on the legislative objective underlying the extended-term sentencing statute, namely, to punish repeat criminal offenders more severely. *Harden*, 113 Ill. 2d at 21.

In light of the legislature's intent, we determined that, despite the absence of language applying the statute to prior federal convictions, the legislature intended the statute to apply to those convictions. We explained as follows:

> "[The legislature's] objective cannot be attained if the statute's application is to depend upon the sheer chance of an offender's having been convicted earlier in a Federal or in a State court. To construe the statute as providing only for consideration of convictions in State courts in Illinois would serve to defeat the statute's purpose of imposing harsher sentences on repeating offenders, who as a matter of public policy should be subject to greater punishment. Too, curiously and unintentionally, it would treat more harshly offenders who have prior convictions in State courts, while exempting Federal offenders." *Harden*, 113 Ill. 2d at 21-22.

Therefore, in *Harden* we held that the language and purpose of section 5–5–3.2(b)(1) required a conclusion that an offender's prior convictions in both federal and state courts may serve as the basis for an extended-term sentence, despite the absence of statutory language

applying the provision to federal convictions. *Harden*, 113 Ill. 2d at 22.[1]

Here, as in *Harden*, we must discern legislative intent on an issue not specifically referenced by section 5–5–3.2(b)(1). In *Harden*, the statutory language clearly applied to prior Illinois convictions but did not reference federal convictions. Here, the statutory language clearly excludes time spent in custody from the 10-year limit, but does not reference exclusion of time spent as a result of a defendant's wrongful delay. Ultimately, as in *Harden*, the legislative intent underlying section 5–5–3.2(b)(1) must control. *Harden*, 113 Ill. 2d at 21; see also, *e.g.*, *Tidwell*, 236 Ill. 2d at 157 (primary objective of statutory construction is giving effect to legislative intent).

Mindful that the legislature intended section 5–5–3.2(b)(1) to impose harsher sentences on repeat offenders who have demonstrated resistance to correction, we conclude that its intent can be honored only by construing the statute to exclude, or toll, time lapsed during a defendant's wrongful delay of criminal proceedings when that defendant otherwise qualifies for an extended-term sentence. In our view, the legislature could not have intended to allow a defendant subject to an extended-term sentence to avoid increased punishment by violating bond and remaining a fugitive from justice until the 10-year statutory limitation expires. Another shortcoming in the construction advanced by defendant, and adopted by the appellate court, is that it illogically punishes more severely defendants who properly participate in criminal proceedings than defendants who flee the jurisdiction to avoid prosecution.

Moreover, construing section 5–5–3.2(b)(1) to allow tolling based on a defendant's wrongful delay of proceedings as a fugitive from justice is consistent with this court's recognition that " '[s]tatutes must be construed in the most beneficial way which their language will permit so as to prevent hardship or injustice, and to oppose prejudice

---

[1]After our decision in *Harden*, the General Assembly amended 5–5–3.2(b)(1) to allow for extended-term sentences, in relevant part, when the defendant has been "previously convicted in Illinois *or any other jurisdiction*." (Emphasis added.) See 730 ILCS 5/5–5–3.2(b)(1) (West 1998).

to public interests.' " *In re Lieberman*, 201 Ill. 2d 300, 309 (2002) (quoting *Mulligan v. Joliet Regional Port District*, 123 Ill. 2d 303, 313 (1988)). Here, as the State argues, construing the statute to toll the 10-year limit when a defendant violates bond and becomes a fugitive comports with well-established Illinois public policy prohibiting a defendant from benefitting from his own wrongdoing and allowing forfeiture of a defendant's otherwise valid claims based on his fugitive status. See *People v. Washington*, 171 Ill. 2d 475, 479 (1996) (concluding that defendant's fugitive status warranted striking all issues raised in defendant's cross-appeal); *Sahlinger v. People*, 102 Ill. 241, 247 (1882) (determining that a defendant "can not be permitted to take advantage of his own wrong, and thus defeat the ends of justice"); *McGowan v. People*, 104 Ill. 100, 101-02 (1882) (approving dismissal of a fugitive defendant's appeal); *People v. Wicklund*, 363 Ill. App. 3d 1045 (2006) (defendant not allowed to appeal defense counsel's failure to comply with instructions on remand because defendant's willful absence made it impossible for counsel to comply); *People v. Box*, 260 Ill. App. 3d 803, 805-06 (1994) (defendant's fugitive status prevented him from benefitting from statute allowing him to serve simultaneous misdemeanor and felony sentences); *People v. Emery*, 190 Ill. App. 3d 171 (1989) (defendant's fugitive status precluded him from obtaining a *per diem* credit typically applied to a court-imposed fine).

We are not persuaded by defendant's contention that the legislature did not intend to toll the 10-year limit for a defendant's wrongful delay when section 5–5–3.2(b)(1) does not expressly allow for tolling. It is likely, if not probable, that the legislature did not specifically address the matter when it enacted the statute because it did not contemplate the exclusion of an extended-term sentence when a defendant wrongfully delayed criminal proceedings by violating bond and fleeing the jurisdiction.

We addressed a similar situation in *In re Powell*, 217 Ill. 2d 123, 137 (2005). In *Powell*, we construed a statutory filing provision under the Sexually Violent Persons Act to determine whether a commitment petition could be timely if filed within 90 days before an inmate's *anticipated* entry into mandatory supervised release (MSR), rather than 90 days before the inmate's *actual* entry into MSR. The respondent in *Powell* refused to accept MSR, delaying his actual

entry, and triggering the 90-day limit. The statute at issue, however, was silent on the issue of whether "entry" meant actual entry into MSR or anticipated entry in MSR. Instead, it merely referenced an inmate's " 'entry into mandatory supervised release.' " *Powell*, 217 Ill. 2d at 134-35 (quoting 725 ILCS 207/15(b–5)(1) (West 2000)).

Rejecting the petitioner's contention that the statutory term "entry" must be construed narrowly to mean actual entry into MSR, we focused on the legislature's intent to keep the public safe from predatory sexual offenders, noting that a strict construction would run counter to that intent. Furthermore, we explained that the statute did not differentiate between actual entry and anticipated entry because the legislature did not contemplate an inmate refusing MSR to trigger the 90-day limit. *Powell*, 217 Ill. 2d at 137-38.

Here, as in *Powell*, it would be reasonable to assume the legislature did not address the situation because it did not envision a defendant avoiding an extended-term sentence by wrongfully delaying criminal proceedings. This does not necessarily mean, however, that the legislature's silence must be construed to permit a defendant to escape an extended-term sentence he otherwise qualifies for by violating bail and becoming a fugitive until the 10-year limit has passed.

Instead, as in *Powell*, we must focus on the legislative intent underlying the statute. As we have already noted, it is indisputable that the legislature intended section 5–5–3.2(b)(1) to impose harsher sentences on defendants who receive another criminal conviction within 10 years of a prior conviction. Considering this clear intent, it would be absurd to construe the statute in a manner that allows a defendant to avoid an extended-term sentence when he violates bond and becomes a fugitive from justice. See *Lewis*, 234 Ill. 2d at 44 (reviewing court may presume that the legislature did not intend to cause absurd results).

We also disagree with defendant's contention that the rule of lenity, requiring penal statutes to be construed strictly in favor of the accused, warrants a construction of the statute to allow a defendant to avoid an extended-term sentence by wrongfully delaying the proceedings. The rule of lenity does not require this court to construe a statute rigidly and circumvent the legislature's intent. *Powell*, 217 Ill. 2d at 142. Indeed, the primacy of legislative intent is paramount,

and all other rules of statutory construction are subordinate to it. *Lieberman*, 201 Ill. 2d at 312. The strict construction advanced by defendant would contravene the legislature's intention to impose harsher penalties on repeat offenders. We cannot countenance defendant's construction.

## III. CONCLUSION

In accordance with the legislature's clear intent to impose harsher penalties on repeat offenders under section 5–5–3.2(b)(1), the statute must be construed to toll the applicable 10-year limit for prior convictions when the defendant wrongfully delays criminal proceedings by violating bond and becoming a fugitive, but otherwise qualifies for an extended-term sentence. Thus, any time that lapses as a result of the defendant's fugitive status should be excluded from the calculation of the 10-year limit. Accordingly, we reverse the part of the appellate court's judgment construing the statute and vacating defendant's extended-term sentences.

Appellate court judgment reversed in part.