# Illinois Official Reports

## Appellate Court

---

### *In re Jarquan B.*, 2016 IL App (1st) 161180

---

| | |
|---|---|
| Appellate Court Caption | *In re* JARQUAN B., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Jarquan B., a Minor, Respondent-Appellant). |
| District & No. | First District, Second Division<br>Docket No. 1-16-1180 |
| Filed<br>Rehearing denied | September 30, 2016<br>October 18, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-JD-00085; the Hon. Stuart F. Lubin, Judge, presiding. |
| Judgment | Affirmed as modified. |
| Counsel on Appeal | Michael J. Pelletier and Darren E. Miller, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, and Ashlee Cuza, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion.<br>Justice Mason concurred in the judgment and opinion.<br>Presiding Justice Hyman concurred in part and dissented in part, with opinion. |

**OPINION**

¶ 1     Respondent, Jarquan B., was found to be in violation of his misdemeanor probation on November 17, 2015, and was committed to the Department of Juvenile Justice (DJJ). Respondent argues the 2016 amendment to section 5-710(b)(1) of the Juvenile Court Act of 1987 (Act), precluded the juvenile court from committing him to the DJJ for a misdemeanor offense. Pub. Act 99-268 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-710(1)(b)). He also argues that the court did not award the proper credit against his sentence for time served on home confinement. For the following reasons, we affirm but modify the mittimus.

¶ 2                                                    BACKGROUND

¶ 3     The State filed a petition for adjudication of wardship for the offense of criminal trespass to a motor vehicle, a Class A misdemeanor (720 ILCS 5/21-2 (West 2014)), after respondent, a minor, was observed driving in a stolen vehicle on December 18, 2014. Respondent entered a plea of guilty on February 26, 2015, and was sentenced to 12 months' court supervision, 30 days stayed detention, and community service. The court informed respondent that if he violated the terms of his supervision, it could enter a finding of delinquency against him and "place [him] on probation, I can hold you in custody for up to 30 days, or I could send you to the Department of Corrections." On the date of the offense the maximum sentence for a Class A misdemeanor was less than one year incarceration. 730 ILCS 5/5-4.5-55 (West 2014).

¶ 4     The State filed a motion to execute the stay of mittimus in July 2015, asking the trial court to hold respondent in the juvenile temporary detention center (JTDC) for leaving his residential placement without permission. The court entered and continued the motion to stay and gave respondent a chance to remain at home while on electronic home monitoring (EHM). Respondent violated his EHM the next day and the court ordered respondent to serve 10 days in JTDC. After he was released, respondent again left his placement without permission and was ordered to serve another 10 days in the JTDC.

¶ 5     On September 28, 2015, the State filed a petition alleging that respondent violated his supervision by leaving his residential placement. On October 13, 2015, respondent admitted to the petition, and the court revoked his supervision. At sentencing on November 5, 2015, the court sentenced respondent to six months' probation. The court asked respondent if he understood that based on his admission, the court could have sentenced respondent to the DJJ where he could remain until he turned 21. Respondent answered that he understood.

¶ 6     On November 6, 2015, the State filed a supplemental petition alleging that respondent violated his probation because he missed school and left his residence. Respondent admitted to the supplemental probation violation. The matter was held over for sentencing and during this period respondent reportedly continued to violate the terms of his probation. The court again asked respondent if he was aware that based on his admission to the probation violation, he could be committed to the DJJ. Respondent stated that he understood.

¶ 7     On December 5, 2015, respondent violated his electronic monitoring and the terms of his probation by leaving his residential placement without permission. An arrest warrant was issued two days later. Respondent was arrested on the warrant on February 5, 2016.

¶ 8     On February 18, 2016, the probation department reported to the court that respondent's probation officer had wanted to request commitment to the DJJ in November or December

2015 but opined that the DJJ was no longer an option for respondent. While the court was considering possible sentences, respondent's probation officer told the court that "the law changed making him [respondent] less eligible for the Department of Corrections." The court stated that because respondent was placed on probation in November 2015, all sentences available then, including commitment to the DJJ, were possible. The court told respondent that if he left his placement again without permission, he would be sent to the DJJ.

¶ 9    In mid-March 2016, respondent again left his residential placement without permission, and an arrest warrant was issued resulting in respondent's arrest about a month later. On April 26, 2016, the juvenile court sentenced respondent to the DJJ. The court rejected defense counsel's argument that the law had changed and minors could no longer be sentenced to the DJJ for misdemeanor adjudications. Respondent was given credit for the 67 days spent in detention, however, he was not given any credit for the time he was on electronic monitoring or home confinement. On April 28, 2016, the DJJ returned respondent to court apparently refusing to take custody of respondent, resulting in the court ordering its April 26 order committing respondent to the DJJ to stand, explaining that should the DJJ return respondent back to court, "the department [would] be held in contempt of court." Respondent appealed.

¶ 10                                ANALYSIS

¶ 11   Effective January 1, 2016, section 5-710 of the Act was amended to prohibit the commitment of juveniles to the DJJ for misdemeanor offenses. Pub. Act 99-268 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-710(1)(b)). Respondent argues on appeal that on the date of sentencing, April 26, 2016, the juvenile court lacked the statutory authority to commit him to the DJJ for a violation of his misdemeanor probation.

¶ 12   Initially, the State argues that this issue is moot because respondent has served his sentence in the DJJ and has been released. An issue becomes moot when an actual controversy no longer exists and the interests of the parties no longer are in controversy. *Novak v. Rathnam*, 106 Ill. 2d 478, 482 (1985). If an appeal involves the validity of a sentence, and that sentence has been served, the appeal is rendered moot. *In re Shelby R.*, 2013 IL 114994. However, exceptions to the mootness doctrine exist. Specific to this case is the public interest exception that requires "(1) the existence of a question of a public nature; (2) the desirability of an authoritative determination for the purpose of guiding public officers in the performance of their duties; and (3) the likelihood the question will recur." *People v. McCaskill*, 298 Ill. App. 3d 260, 264 (1998).

¶ 13   In *In re Dexter L.*, 334 Ill. App. 3d 557, 558 (2002), this court applied the public interest exception to the mootness doctrine where a juvenile was found in violation of his probation and was ordered to be detained for 30 days in the county jail. The State argued that the appeal was moot because respondent had already served the 30 days. We concluded that " '[t]he detention of a juvenile is a matter of public concern, and an authoritative determination of the issue will guide public officials and juvenile court judges who are likely to face the problem in the future.' " *Id.* (quoting *People v. Clayborn*, 90 Ill. App. 3d 1047, 1052 (1980)). We also reasoned that, due to the time constraints imposed by the Act, the issue was likely to recur with other minors in the future. *Id.* We find the same considerations outlined in *In re Dexter L.*, to be relevant here.

¶ 14   Similar to in *In re Dexter L.*, the issue presented here is a matter of public concern and an authoritative determination of this issue by this court will guide juvenile court judges who are

likely to consider this issue in the near future. There are undoubtedly numerous juveniles, who were sentenced prior to January 1, 2016, who are currently serving a sentence of probation for an underlying misdemeanor offense. Those juveniles were eligible to be sentenced to the DJJ at the time of sentencing on their misdemeanor offense and face the potential of being sentenced to the DJJ if found in violation of that probation. We therefore find the public interest exception to the mootness doctrine applies and we will consider the merits of respondent's appeal.

¶ 15     Respondent asserts the "statute" is ambiguous, without specifying what statute or the basis for his argument. We assume what respondent is referring to is that the language of the 2016 amendment to section 5-710(1)(b) is ambiguous. Respondent and our dissenting colleague look to the legislative debates surrounding this amendment to discern the intent of the legislature in support of the argument that respondent's commitment to the DJJ after January 1, 2016, for a violation of misdemeanor probation imposed prior to January 1, 2016, is unauthorized.

¶ 16     Respondent argues that the juvenile court lacked the statutory authority under the Act to commit him to the DJJ for the misdemeanor offense of criminal trespass to vehicle because, as of January 1, 2016, the court no longer had the statutory authority to sentence him to the DJJ for a misdemeanor offense. On February 26, 2015, respondent pled guilty to criminal trespass to vehicle and was sentenced to supervision. On respondent's sentencing date, section 5-710(1)(b) of the Act authorized the commitment of a juvenile to the DJJ for a misdemeanor offense. 705 ILCS 405/5-710(1)(b) (West 2014). At that time, section 5-710 provided:

> "A minor found to be guilty may be committed to the Department of Juvenile Justice under Section 5-750 if the minor is 13 years of age or older, provided that the commitment to the Department of Juvenile Justice shall be made only if a term of incarceration is permitted by law for adults found guilty of the offense for which the minor was adjudicated delinquent." *Id.*

Thereafter, effective January 1, 2016, three months before respondent was committed to the DJJ for a violation of misdemeanor probation, section 5-710 was amended to provide:

> "A minor found to be guilty may be committed to the Department of Juvenile Justice under Section 5-750 if the minor is at least 13 years and under 20 years of age, provided that the commitment to the Department of Juvenile Justice shall be made only if a term of imprisonment in the penitentiary system of the Department of Corrections is permitted by law for adults found guilty of the offense for which the minor was adjudicated delinquent." Pub. Act 99-268 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-710(1)(b)).

¶ 17     The primary object of statutory construction is to give effect to the true intent of the legislature. *Holland v. City of Chicago*, 289 Ill. App. 3d 682, 685-86 (1997). "Legislative intent is best determined from the language of the statute itself ***." *General Motors Corp. v. State of Illinois Motor Vehicle Review Board*, 224 Ill. 2d 1, 13 (2007). When the language of a statute is clear and unambiguous, it must be applied without resort to other aids of construction. *Alternate Fuels, Inc. v. Director of the Illinois Environmental Protection Agency*, 215 Ill. 2d 219, 238 (2004).

¶ 18     A statute is ambiguous if its meaning cannot be interpreted from its plain language or if it is capable of being understood by reasonably well-informed persons in more than one manner. *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395-96 (2003). When the language is

unambiguous, the law is to be enforced as enacted by the legislature. *Paszkowski v. Metropolitan Water Reclamation District of Greater Chicago*, 213 Ill. 2d 1, 6 (2004).

¶ 19     We find nothing ambiguous in the amendment to section 5-710(1)(b). As amended, the statute clearly states that a juvenile cannot be sentenced to the DJJ unless "a term of imprisonment in the penitentiary system of the Department of Corrections is permitted by law for adults found guilty of the offense for which the minor was adjudicated delinquent." Pub. Act 99-268 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-710(1)(b)). It is equally clear that this amended statute became effective January 1, 2016. Therefore, we find no ambiguity exists.

¶ 20     The dissent suggests that the 2016 amended section 5-710(b)(1) is ambiguous because the legislature did not include language addressing the temporal reach of the amended statute and therefore it has more than one reasonable interpretation. The dissent's discussion of the legislative history of section 5-710(b)(1) is neither helpful nor required in interpreting the 2016 amendment to section 5-710(b)(1) where the plain language of the section is clear and unambiguous. To adopt the position that every amended statute that fails to include express language as to its temporal reach is ambiguous is untenable as it would undoubtedly put every amended Illinois statute at risk for unnecessary attack.

¶ 21     Thus, in our view, the question is not what the straightforward language of amended section 5-710 means, but to which cases it should apply. In order to resolve this appeal, we must construe another provision of the Act. In addition to section 5-710, we must also consider section 5-720(4) of the Act, which governs probation violations. 705 ILCS 405/5-720(4) (West 2014). Section 5-720(4) provides that where the court finds the minor has violated a term of probation the court may "impose any other sentence that was available under [s]ection 5-710 at the time of the initial sentence." 705 ILCS 405/5-720(4), 5-710 (West 2014).

¶ 22     Respondent argues that after January 1, 2016, section 5-710(1)(b) and section 5-720(4) are in conflict such that his commitment to the DJJ was unauthorized. The dissent identifies the essence of a conflict based on its belief that the amendment to section 5-710(1)(b) operates to preclude the juvenile court from imposing a sentence that was "available at [the time] of sentencing." In our view, section 5-720(4) applies because respondent was committed due to a finding that he violated his terms of probation and section 5-720(4) could not be more clear: a juvenile who violates probation may receive any other sentence "available under [s]ection 5-710 *at the time of the initial sentence*" which, in respondent's case, is commitment to the DJJ. (Emphasis added.) 705 ILCS 405/5-720(4) (West 2014). According to the version of section 5-710(1)(b) in effect at the time respondent pled guilty to criminal trespass to vehicle, respondent could have been committed to the DJJ for the misdemeanor offense. 705 ILCS 405/5-710(1)(b) (West 2014). When section 5-710 was amended the legislature could have, but did not, amend section 5-720(4) to prohibit commitment to the DJJ for a violation of probation. Therefore, the juvenile court's order committing respondent to the DJJ for a violation of his probation was authorized. To find otherwise would be to ignore the clear legislative intent expressed in section 5-720(4) of the Act. 705 ILCS 405/5-720(4) (West 2014).

¶ 23     Where two statutes are allegedly in conflict, a court has a duty to interpret the statutes in a manner that avoids an inconsistency and gives effect to both statutes, where such an interpretation is reasonably possible. *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311-12 (2001). As noted above, generally when two statutes are in conflict, the more specific should take precedence over the more general and the more recently enacted statute should be applied over

the earlier enacted statute. *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 451 (2005). However, statutes must be in direct conflict to apply the more recently enacted statute over the earlier enacted statute. *Byrne v. City of Chicago*, 215 Ill. App. 3d 698, 709-10 (1991).

¶ 24   In considering whether amended section 5-710(1)(b) applies to respondent's commitment for violation of his probation we find the analysis in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), instructive. "The *Landgraf* analysis consists of two steps. First, if the legislature has expressly prescribed the statute's temporal reach, the expression of legislative intent must be given effect absent a constitutional prohibition. Second, if the statute contains no express provision regarding its temporal reach, the court must determine whether the new statute would have retroactive effect ***." *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 330-31 (2006). However, Illinois courts will rarely need to go beyond the first step of the *Landgraf* analysis because section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2014)) provides direction on the temporal reach of every statutory amendment. *Caveney v. Bower*, 207 Ill. 2d 82, 92 (2003). Section 4 states:

> "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. *If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect.*" (Emphasis added.) 5 ILCS 70/4 (West 2014).

Pursuant to this section, "legislative enactments can constitute a substantive change or a procedural change, or they can mitigate the sentence." *People v. Jackson*, 2016 IL App (1st) 141448, ¶ 30 (citing *People v. Gancarz*, 228 Ill. 2d 312, 319, 321-22 (2008)).

¶ 25   In this case, the amendment to section 5-710(1)(b) merely mitigated the sentence to which respondent could be subject. Given that the amendment took effect before respondent was sentenced on his probation violation, section 4 of the Statute on Statutes would ordinarily permit him to elect to be sentenced under it. See *People v. Calhoun*, 377 Ill. App. 3d 662, 664 (2007) (" '[Where] any punishment is mitigated by the provisions of a new law, a defendant can consent to the application of the new provision if it became effective prior to his sentencing.' " (quoting *People v. Land*, 178 Ill. App. 3d 251, 260 (1988))).

¶ 26   But this does not end our inquiry, as we must consider this section in concert with section 5-720(4) of the Act, which requires the court, upon a finding that the minor has violated a term of probation, to impose a sentence "*that was available under Section 5-710 at the time of the initial sentence.*" (Emphasis added.) 705 ILCS 405/5-720(4) (West 2014).

¶ 27   Although the parties do not recognize or address it, section 5-720(4) conflicts with section 4 of the Statute on Statutes. While section 4 would permit respondent to take advantage of the mitigated sentence that amended section 5-710 provides, section 5-720(4) requires respondent to be sentenced under the original version of section 5-710 in effect at the time of his initial sentencing.

- 6 -

¶ 28    Where two statutes are in conflict, a court has a duty to interpret the statutes in a manner that avoids an inconsistency and gives effect to both statutes, where such an interpretation is reasonably possible. *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311-12 (2001). Generally, the more specific statute should take precedence over the more general, and the more recently enacted statute should be applied over the earlier enacted statute. *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 451 (2005). Stated differently, the more specific statute should be construed as an exception to the more general one. *People ex rel. Madigan v. Burge*, 2014 IL 115635, ¶ 31.

¶ 29    Section 5-720(4) is certainly more specific than section 4 of the Statute on Statutes: the former prescribes the sentence for juvenile probation revocation (705 ILCS 5/5-720(4) (West 2014)), while the latter generally addresses penalties and punishments for all crimes (5 ILCS 70/4 (West 2014)). Moreover, section 5-720(4) of the Act, with an effective date of January 1, 1999, is more recent than section 4 of the Statute on Statutes, which has an effective date of July 1, 1874. Thus, we construe section 5-720(4) as an exception to section 4 and conclude that pursuant to section 5-720(4), respondent was not entitled to be sentenced under amended section 5-710.

¶ 30    Here, it is undisputed that respondent pled guilty to the offense of criminal trespass to a vehicle in February 2015 and that criminal trespass to a vehicle is a Class A misdemeanor punishable by up to a year imprisonment. 705 ILCS 405/5-710(1)(b) (West 2014) (a minor may be committed to the DJJ only if a term of incarceration is permitted by law for adults found guilty of the offense for which the minor was adjudicated delinquent); 730 ILCS 5/5-4.5-55 (West 2014). Respondent pled guilty and was sentenced to 12 months' supervision. On October 13, 2015, respondent was found in violation of his supervision. On November 3, 2015, respondent's supervision was revoked, and he was placed on six months' probation. Respondent was admonished by the juvenile court, at least twice, that a violation of his probation could result in his being committed to the DJJ.

¶ 31    The plain language of section 5-720(4) of the Act states that a minor found in violation of probation may be subjected to any sentence available at the time of his initial sentence allowed by section 5-710 of the Act. 705 ILCS 405/5-720(4) (West 2014). According to the version of section 5-710(1)(b) in effect at the time respondent pled guilty to criminal trespass to vehicle, respondent could have been committed to the DJJ for the misdemeanor offense. 705 ILCS 405/5-710(1)(b) (West 2014). The amendment effective January 1, 2016, did not preclude the trial court from committing respondent to the DJJ for a violation of probation, as the amendment occurred subsequent to the date of sentencing on the original offense, February 26, 2015. Therefore, the juvenile court's order committing respondent to the DJJ for a violation of his probation was authorized. To find otherwise would be to ignore the clear legislative intent expressed in section 5-720(4) of the Act. 705 ILCS 405/5-720(4) (West 2014).

¶ 32    Our supreme court has stated that the law in effect at the time of the offense governs unless there is " 'an express statutory provision stating an act is to have retroactive effect.' " *People v. Davis*, 97 Ill. 2d 1, 23 (1983) (quoting *Village of Wilsonville v. SCA Services, Inc.*, 86 Ill. 2d 1, 18 (1981)). The legislature could have chosen to make the amendment to section 5-710(1)(b) retroactive, but chose not to do so and such a result under the facts of this case is not warranted under well-settled principals of statutory construction. As such, we find that the juvenile court properly committed respondent to the DJJ for violating his probation.

¶ 33     Respondent next argues and the State agrees that respondent should be given credit for the 41 days that he spent on electronic monitoring. Pursuant to our authority under Illinois Supreme Court Rule 615(b)(1), and our ability to correct a mittimus without remand (see *People v. Hill*, 408 Ill. App. 3d 23, 31 (2011)), we correct respondent's mittimus to reflect 41 days of presentence credit.

¶ 34                                                    CONCLUSION

¶ 35     For the foregoing reasons, we affirm the judgment of the juvenile court but correct the mittimus.

¶ 36     Affirmed as modified.

¶ 37     PRESIDING JUSTICE HYMAN, concurring in part and dissenting in part.

¶ 38     The Illinois legislature amended the Juvenile Court Act to preclude minors from being sentenced to the DJJ for misdemeanor offenses after January 1, 2016. Nonetheless, on April 26, 2016, the circuit court sentenced Jarquan B. to the DJJ for a misdemeanor—trespass to vehicle (720 ILCS 5/21-2(b) (West 2014)). This sentence directly conflicts with both the language of the amendment and the legislature's intent in adopting it. Thus, I respectfully dissent from that part of the majority's decision affirming Jarquan's sentence and would remand for resentencing.

¶ 39     Before January 1, 2016, a minor convicted of a misdemeanor could be sentenced to the DJJ, while an adult who committed the same offense could not be sentenced to the Department of Corrections. In recognition of this sentencing disparity and in an effort to reduce the number of juveniles in DJJ custody, as of January 1, 2016, minors would no longer be committed to the DJJ for misdemeanor offenses. Pub. Act 99-268 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-710(1)(b)). Thus, a minor who is found guilty of the Class A misdemeanor of criminal trespass to a motor vehicle, as Jarquan was, cannot be sentenced to the DJJ. Jarquan's case poses a dilemma, however, because he committed the offense before the amendment's January 1, 2016, effective date but was sentenced after. Does the amendment preclude the trial court from sentencing him to the DJJ?

¶ 40     In resolving this question, the trial court correctly looked to section 5-720(4) of the Act (705 ILCS 405/5-720(4) (West 2014)), which governs violations of probation. Section 5-720(4) states, in relevant part, that if the court finds that a minor has violated a term of probation, the court may "impose any other sentence that was available under Section 5-710 at the time of the initial sentence." *Id.* The trial court determined that because Jarquan admitted to violating his probation, it had authority to impose any sentence it could have imposed when Jarquan was placed on probation, including DJJ commitment. The trial court apparently saw no conflict between section 5-720(4) and the newly amended section 5-710. The majority agrees, concluding that those provisions "are not in conflict and can be read harmoniously." The majority also finds "nothing ambiguous in the amendment to section 5-710(1)(b)." *Supra* ¶ 19. The majority opinion, in my view, ignores the legislature's expressed intent and abandons settled rules of statutory construction.

¶ 41     As to the issue of ambiguity, the majority asserts that the legislature, in amending section 5-710(1)(b), intended to preclude juveniles from being committed to the DJJ for misdemeanor

offenses committed *after* January 1, 2016. Nothing in the amended statute expressly states that it only applies to offenses occurring after January 1, 2016, but the majority contends that if the legislature intended otherwise, it could have so stated. The majority also asserts that the legislature could have amended section 5-720(4) to preclude a trial court from sentencing a minor who violates his probation for an offense committed before January 1, 2016, from being sentenced to the DJJ but, again, chose not to. Thus, the majority concludes that under the plain language of section 5-720(4), a minor who violates his or her probation may be subject to any sentence available at the time of his or her initial sentence, including commitment to the DJJ.

¶ 42 As noted, the legislature did not address whether section 5-710(1)(b) apples only to offenses that occur after January 1, 2016, or can preclude commitment to the DJJ after the amendment's effective date, regardless of when the offense occurred. The amendment's plain language, when read in conjunction with section 5-720(4) of the Act, is amenable to more than one reasonable interpretation and both the State and Jarquan present reasonable, though contrary, interpretations. Our supreme court has defined a statute as "ambiguous" when "it is capable of being understood by reasonably well-informed persons in two or more different senses." *Advincula v. United Blood Services*, 176 Ill. 2d 1, 18 (1996). Because the amendment is open to different plausible interpretations as to its application, it is ambiguous.

¶ 43 When construing a statute, our fundamental objective is to ascertain and give effect to the legislature's intent, best indicated by the plain and ordinary meaning of the statutory language. *People v. Garcia*, 241 Ill. 2d 416, 421 (2011). A reviewing court also may consider the underlying purpose of the statute's enactment, the evils sought to be remedied, and the consequences of construing the statute in one manner versus another. *Id.* "[T]he primacy of legislative intent is paramount, and *all* other rules of statutory construction are subordinate to it." (Emphasis added.) *Id.* at 426; see also *Boston Sand & Gravel Co. v. United States*, 278 U.S. 41, 48 (1928) (plain meaning should be considered "an axiom of experience [rather] than a rule of law and does not preclude consideration of persuasive evidence if it exists"). As Judge Richard Posner reminds us, "Legislators cannot foresee and solve in advance all the problems that will arise in the practical administration of the statutes they enact. The judicial duty of statutory interpretation is not a duty merely to read; it is a duty to help the legislature achieve the aims that can reasonably be inferred from the statutory design, and it requires us to pay attention to the spirit as well as the letter of the statute." *United States v. Markgraf*, 736 F.2d 1179, 1188 (7th Cir. 1984) (Posner, J., dissenting).

¶ 44 Although the majority scoffs at considering legislative history, this court has done so with regularity. In construing statutory language, Illinois courts consider extrinsic aids, including going directly to the legislative history, to resolve the ambiguity and determine legislative intent. *People v. Whitney*, 188 Ill. 2d 91, 97-98 (1999). The legislative history of the amendment supports a finding that the legislature intended that no juvenile be committed to the DJJ after the amendment's effective date.

¶ 45 During the Senate debate, Senator Kwame Raoul stated that the amendment to section 5-710(1)(b) is intended to "address the fact that we're committing *** too many minors to the Department of Juvenile Corrections, at quite a cost to the State." 99th Ill. Gen. Assem., Senate Proceedings, April 22, 2015, at 177 (statements of Senator Raoul). Senator Raoul said that the amendment "makes certain that we no longer commit juvenile misdemeanants to the Department of Juvenile Justice." *Id.*

¶ 46    During the House debate, Representative Elaine Nekritz echoed Senator Raoul, stating that "This legislation is designed to right size our population at the Department of Juvenile Justice and *** better target our resources ***." 99th Ill. Gen. Assem., House Proceedings, May 28, 2015, at 41 (statements of Representative Nekritz). She stated that one of the amendment's main goals "is to keep those juveniles who have committed misdemeanors out of DJJ." *Id*. When asked by Representative Ron Sandack if the amendment is consistent with the Governor's goal of trying to reduce prison populations, Nekritz stated, "Very much so." 99th Ill. Gen. Assem., House Proceedings, May 28, 2015, at 42 (statements of Representative Nekritz). She also agreed that it's an effort to "keep as many people out of the prison system[,] if possible," and when asked about cost savings, stated that it was estimated the legislation would reduce DJJ commitments by 110 per year. 99th Ill. Gen. Assem., House Proceedings, May 28, 2015, at 42-43 (statements of Representatives Nekritz and Sandack).

¶ 47    These debates show that the legislature intended to reduce the DJJ population, ensure that juveniles are no longer committed to the DJJ for misdemeanor offenses for crimes that if committed as an adult would not result in commitment to the Department of Corrections, and save the state money. In looking to the "evils sought to be remedied" and the purposes to be achieved (*Garcia*, 241 Ill. 2d at 421), sentencing Jarquan to the DJJ for a misdemeanor after the effective date of the amendment undermines the amendment's goals and fails to advance the legislature's intent.

¶ 48    The Statute on Statutes (5 ILCS 70/0.01 *et seq.* (West 2014)) also supports a finding that the trial court should have followed the amended section 5-710(1)(b) in sentencing Jarquan rather than the pre-amendment statute. Section 4 of the Statute on Statutes states, in part, "If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect." 5 ILCS 70/4 (West 2014). Under section 4 of the Statute on Statutes, legislative enactments can constitute a substantive change or a procedural change or can mitigate the sentence. *People v. Gancarz*, 228 Ill. 2d 312, 319, 321-22 (2008). And our supreme court has held that where a new sentencing law provides for a lesser penalty than the former law, the defendant is to be sentenced under the new law. *People v. Zboralski*, 33 Ill. App. 3d 912 (1975) (citing *People v. Harvey*, 53 Ill. 2d 585 (1973)).

¶ 49    Because I believe that the amendment to section 5-710(1)(b) precludes any minor from being committed to the DJJ for a misdemeanor after January 1, 2016, I disagree with the majority's assertion that the amendment does not conflict with section 5-720(4). A plain reading of section 5-720(4) suggests that a juvenile who violates probation may receive any other sentence "available under section 5-710 at the time of the initial sentence," which in some instances, like Jarquan's, would presumably include commitment to the DJJ. Section 5-710(1)(b), however, prevents a trial court from committing a juvenile to the DJJ for a misdemeanor offense any time after January 1, 2016. I would suggest this is the essence of a conflict.

¶ 50    If statutes conflict, courts have a duty to construe them in a way that gives effect to both, if such construction is possible. *People v. Lucas*, 231 Ill. 2d 169, 182 (2008). Generally, when two statutes are in conflict, the more specific takes precedence over the more general and the one enacted later should prevail, as a later expression of legislative intent. *Village of Chatham v. County of Sangamon*, 216 Ill. 2d 402, 431 (2005). Section 5-710(1)(b) was enacted after section 5-720(4), which was last amended in 1999. This indicates a legislative intent to exclude

commitment to the DJJ for misdemeanors, when the sentence is imposed after January 1, 2016. Moreover, section 5-710(1)(b) is a specific provision, which prohibits a juvenile from being committed to the DJJ for a misdemeanor offense, while section 5-720(4) is a general provision, allowing a court to impose any sentence that would have been permissible when the sentence was first imposed. Thus, in light of the expressed legislative intent, the more specific language of the amendment and its recent adoption, section 5-710(1)(b) is an exception to the general language of section 5-720(4) and prohibits the trial court from committing Jarquan to the DJJ.

¶ 51    Moreover, and perhaps as telling, if the amendment only applies to minors who committed a misdemeanor after January 1, 2016, then section 5-720(4) conflicts with the plain language of the amendment to section 5-710(1)(b) and the legislature's intent. The majority does not dispute that the legislature amended section 5-710(1)(b) to keep juveniles out of the DJJ for minor offenses.

¶ 52    I agree with the majority that in determining whether amended section 5-710(1)(b) applies to Jarquan's sentence, the analysis in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), is instructive. I also agree that we do not need to go beyond the first step of the *Landgraf* analysis, because section 4 of the Statute on Statutes provides direction on the temporal reach of every statutory amendment. *Caveney v. Bower*, 207 Ill. 2d 82, 92 (2003). The majority concedes that because the amendment to section 5-710(1)(b) took effect before Jarquan was sentenced on the probation violation, section 4 of the Statute on Statutes "would ordinarily permit him to elect to be sentenced under it." But the majority then raises an issue not addressed by the parties—an apparent conflict between section 4 of the Statute on Statutes and section 5-720(4) of the Act. Applying the rule that the more specific statute should be construed as an exception to the general one (*People ex rel. Madigan v. Burge*, 2014 IL 115635, ¶ 31), the majority concludes that as the more specific, section 5-720(4) is the exception to section 4 of the Statute on Statutes. Hence, section 5-720(4) requires Jarquan be sentenced under the version of section 5-710(b)(1) in effect at the time of his sentencing. This extra complication not only belies the majority's contention that the amendment is not ambiguous, but also the whole argument is a red herring.

¶ 53    The Statute on Statutes is an extrinsic aid of construction applied only if a statute is ambiguous; it is not part of section 5-710. Accordingly, the Statute on Statutes itself does not conflict with provisions of the Juvenile Justice Act. Moreover, by resorting to section 4 of the Statute on Statutes, the majority has, in essence, acknowledged that the temporal reach of amended section 5-710(1)(b), when read in conjunction with section 5-720(4), is ambiguous and cannot be determined by the statute's plain language, as the majority so contends.

¶ 54    As noted, to resolve the conflict between amended section 5-710(1)(b) and section 5-720(4), which has created ambiguity about the amendment's temporal reach, section 4 of the Statute on Statutes permits Jarquan to elect to be sentenced under the amended statute. This interpretation not only complies with settled rules of statutory construction but, above all, it furthers the intent of the legislature in amending section 5-710(1)(b) to stop the practice of committing juveniles to the DJJ for minor offenses.

¶ 55    While the majority correctly states that statutes should be interpreted "to give effect to the true intent of the legislature," the majority fails to do that very thing. Instead, the majority opts to ignore the amendment and the legislature's intent by applying the prior version of section 5-710(1)(b) to affirm Jarquan's commitment to the DJJ for a misdemeanor. This conflicts with the legislature's intent, as evidenced by the legislative history of amended section 5-710(1)(b),

including making sure that minors are no longer committed to the DJJ for misdemeanor offenses that would not result in imprisonment if they were adults.

¶ 56   .   I would reverse Jarquan's sentence and remand for a new sentencing hearing.