2022 IL App (2d) 190981
No. 2-19-0981
Opinion filed February 10, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-2389 |
| ARTAVEUS LOWE, | ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Zenoff and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Artaveus Lowe, argues that the State presented insufficient evidence to sustain his conviction under section 11-9.3(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/11-9.3(a) (West 2018)), which provides, "It is unlawful for a child sex offender to knowingly be present in any school building, [or] on real property comprising any school *** when persons under the age of 18 are present in the building, [or] on the grounds ***." Defendant's conviction was for his presence in a parking space adjacent to a high school field house. He argues that, because the State did not present any evidence of the high school grounds layout, it did not show the relationship between the field house parking lot and "the school building itself." Thus, the evidence was insufficient to show that the field house grounds were part of the high school. We find that

defendant's argument relies on an improperly narrow definition of "school." We conclude that the field house was part of the high school and that the parking space was part of the high school grounds. Thus, the parking space was on high school real property. Accordingly, we affirm.

¶ 2                                     I. BACKGROUND

¶ 3      The State indicted defendant on a single count of violating section 11-9.3(a) of the Code (720 ILCS 5/11-9.3(a) (West 2018)). The indictment alleged that, on October 14, 2018, defendant, a child sex offender, "knowingly and unlawfully was present upon school property, Dundee Crown High School ***, while persons under the age of 18 years of age were present."

¶ 4      Defendant had a bench trial. The evidence showed that, on the morning of Sunday, October 14, 2018, the Dundee-Crown High School field house in Carpentersville was the site of a nonschool recreational cheerleading competition for children of middle school age or younger. Children in the competition were arriving when defendant was first present. Defendant arrived in a van at the parking area in front of the field house. He was with Melissa Freund—one of the cheerleading coaches—and Freund's daughter. They parked in a handicap space alongside the field house, and defendant got out to help unload the van. While defendant was near the van, Shaun Schroeder, an Elgin police officer who was off duty and present for the competition, recognized him. Schroder believed that defendant was a registered child sex offender, and Schroder confirmed this by a call to his department.

¶ 5      Schroder testified that there was a parking lot "attached" to the high school. He implied that the high school and the field house shared the same parking lot, but he left it unclear whether the buildings were attached or separate (apparently, they were separated at most by a parking lot). Schroder's testimony was clear that the competition was held *inside* the field house.

¶ 6     Freund also testified; she agreed that she and defendant had gone to the "high school" that morning and that they had parked in a "handicapped stall in the front" of "the school."

¶ 7     The State presented evidence that defendant, when interviewed, agreed that he was at "Dundee Crown High School" on October 14, 2018.

¶ 8     Detective Chris Bognetti of the Carpentersville Police Department testified that he was familiar with the high school and its grounds. The State questioned him about the configuration of the high school campus:

"Q. Is there a parking lot to that high school?

A. Yes.

Q. Is it attached to the high school?

A. Yes.

Q. Now, prior to entering actually the parking lot of the high school, are there any signs indicating that you are about to enter a high school?

A. Yes.

Q. And what are those signs?

A. There is a large sign that can be lighted at night. And it says 'Dundee Crown High School.'

Q. And where is that located in relation to the parking lot?

A. It is at the entry to the school, the driveway that leads into the school. And it is at the street which is Kings Road.

Q. Would it be fair to say after you passed that first sign that you just described that you would be on the campus of Dundee Crown High School?

* * *

A. Yes."

¶ 9    A photograph admitted into evidence showed part of the field house with an area of asphalt paving in the foreground. A banner with the words "Dundee-Crown Chargers" hangs near the top of the building. However, the photograph does not show the physical relationship between the field house and the main classroom building or buildings.

¶ 10    Defense counsel made a motion for a directed finding on the basis that the State had failed to offer sufficient evidence that defendant was "present upon school property as is required by the statute, specifically on real property comprising any school." Counsel questioned how Bognetti could have known where the school's property lines were; counsel implied that the State had to prove that the land on which defendant was present "belonged to" the school. The court denied the motion:

> "It would be kind of an absurd reading of the law to suggest that the parking lot outside the school building is appropriate grounds for people who are required to stay away from school property to be present. I think the testimony was sufficient to establish that it was part of the school property."

¶ 11    The defense rested without presenting any evidence. In arguing to the court, counsel contended that the evidence was insufficient to show that the "parking lot was owned or operated by the school." The State argued that, even if the evidence did not show that the parking lot was owned or operated by the high school, the evidence nevertheless showed that defendant was "loitering within 500 feet [of] the school building comprising any school."

¶ 12    The court found that defendant was guilty based on his presence on the real property comprising the high school:

"If I were to accept the defendant's argument, the exceptions that would be carved out of the statute would be endless.

\* \* \*

Was he present on any real property comprising any school? That is the argument the defense is making is that there is no testimony or evidence that the parking lot is real property comprising the school.

Well, of course it is. It is part of the school grounds. And he was present there."

¶ 13    The court sentenced defendant to one year of imprisonment. Defendant timely appealed.

¶ 14                                  II. ANALYSIS

¶ 15    On appeal, defendant contends that his conviction is unsustainable because "the State presented no evidence or testimony on whether the parking lot outside the field house was real property comprising the high school." He asks us to deem persuasive two out-of-state cases, *Stamps v. State*, 620 So. 2d 1033 (Fla. Dist. Ct. App. 1993)), and *State v. Peterson*, 490 N.W.2d 53 (Iowa 1992), relevant to land contiguity issues in deciding school real property.

¶ 16    The State responds that the evidence showed that the field house was physically attached to the main school building or was at least on land contiguous to it. In any event, the State asserts, "the parking lot at the field-house [*sic*] satisfied the plain and ordinary meaning of 'real property comprising any school' as contemplated by the statute." The State asserts:

"To construe the statute such that parking lots are not included in school grounds, and therefore, not off limits to child sex offenders, would end the statute's reach at the door of a school, contradicting both the definition of a school and the purpose of the legislation—leading to absurd results. Clearly, school playgrounds and parking lots are not places the legislature intended to invite child sex offenders."

¶ 17    In reply, defendant contends that the State "begs the issue of whether the particular parking space in question, which was in front of the athletic field house and the [*sic*] not the school, constituted real property that comprised the school."

¶ 18    We review the sufficiency of the evidence under the standards of *Jackson v. Virginia*, 443 U.S. 307 (1979), as adopted by *People v. Collins*, 106 Ill. 2d 237 (1985). When a reviewing court decides a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Collins*, 106 Ill. 2d at 261 (quoting *Jackson*, 443 U.S. at 319). "Under this standard, a reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *People v. Davison*, 233 Ill. 2d 30, 43 (2009).

¶ 19    Here, defendant's argument turns on the applicable definition of a "school," an issue of statutory construction.

> "The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. [Citations.] The most reliable indicator of the legislature's intent is the language used in the statute, which must be given its plain and ordinary meaning. Where the statutory language is clear and unambiguous, it will be given effect without resort to other aids of construction." *In re Mary Ann P.*, 202 Ill. 2d 393, 405 (2002).

"A reviewing court may also consider the underlying purpose of the statute's enactment, the evils sought to be remedied, and the consequences of construing the statute in one manner versus another." *People v. Garcia*, 241 Ill. 2d 416, 421 (2011). A court should "always presume[ ] that the legislature did not intend to cause absurd, inconvenient, or unjust results." *Garcia*, 241 Ill. 2d at 421. We address issues of statutory construction *de novo*. *Garcia*, 241 Ill. 2d at 421.

¶ 20    We agree with the State that the field house parking lot was on "real property comprising [a] school" under the plain language of section 11-9.3(a). Further, defendant's argument relies on a false premise. In his reply brief, he denies that the field house is the "school" and therefore denies that we can infer from the proximity of the field house parking lot to the field house that the parking lot was part of the high school grounds. In other parts of his argument, he implies that the "school" is nothing more than "the school building itself," meaning the central classroom building of a typical primary school or a small secondary school. His implied definition of a "school" is inconsistent with the Code and tends to defeat the purpose of section 11-9.3(a).

¶ 21    Section 11-9.3(a) derives its definition of a "school" from section 2-19.5 of the Code (720 ILCS 5/2-19.5 (West 2018)), which provides: " 'School' means a public, private, or parochial elementary or secondary school, community college, college, or university and includes the grounds of a school." The inclusion of both "college[s]" and "universit[ies]"—which typically have multiple buildings—in the definition shows that the legislature did not contemplate that a "school" would necessarily be embodied in a single building. Further, nothing in the Code's definition implies that an athletic facility or playground is not as much a part of a school as what the defendant defines as "the school building itself." Defendant's implicit narrowing of the term "school" to some single building is inconsistent with the Code's definition.

¶ 22    Defendant's implied definition of a "school" is inconsistent with the purpose of section 11-9.3(a), which is self-evident: the legislature intended to protect minor students from child sex offenders by barring child sex offenders from school property while minors are present. Defendant's implied definition of a "school" would mean that school facilities on tracts not contiguous with the real property on which "the school building itself" is located would be outside the scope of section 11-9.3(a). But the legislature could not have reasonably concluded that minors

using school facilities on discontiguous land need *less* protection than those nearer the main building. Indeed, the vulnerability of students using more remote facilities suggests that *more* protection is appropriate. Thus, leaving facilities on discontiguous land unprotected would create an absurd loophole in the law. Moreover, school facilities, athletic facilities, and outdoor areas stand out as areas where protection from child sex offenders is most obviously necessary. Therefore, it would be absurd to conclude that the legislature implicitly excluded such facilities from the meaning of a "school" for purposes of section 11-9.3(a) when it did not exclude such facilities from the definition of a "school" in section 2-19.5.

¶ 23    Because the field house was part of the high school, the field house property was necessarily part of the high school grounds. Further, since a school's grounds are part of the school per section 2-19.5, the field house grounds were part of the high school's real property. Defendant does not deny that the field house parking lot was part of the grounds of the *field house*, only that it was part of the high school grounds. Further, the parking space where Freund placed defendant was directly in front of the field house—essentially at the field house door. Thus, the evidence strongly supported the conclusion that defendant was on the field house grounds and therefore on the school's real property.

¶ 24    We are unpersuaded by the cases on which defendant primarily relies. In *Stamps*, the defendant challenged his conviction of purchasing cocaine within 1000 feet of " 'real property *comprising* *** a school.' " (Emphasis in original.) *Stamps*, 620 So. 2d at 1033 (quoting Fla. Stat. § 893.13(1)(e) (1991)). The defendant argued that the purchase occurred in an overflow parking lot separated from the "school itself" by a soccer field. *Stamps*, 620 So. 2d at 1033. The *Stamps* court reversed the defendant's conviction, reasoning:

"We would affirm [the defendant's drug conviction] if the evidence would have permitted the jury to infer that defendant's cocaine purchase was made within 1,000 feet of the 'boundaries' of the school, that is, within 1,000 feet of the school area consisting of contiguous tracts owned by the school, none of which were separated from one another by any intervening tract having a different owner. See *Lyon v. State*, 591 So. 2d 1107 ([Fla. Dist. Ct. App.] 1992).

However, our review of the record establishes the lack of an evidentiary basis for such an inference. At best, the evidence merely shows that the purchase was made within 1,000 feet of a parking lot owned by the school. Under the rule of lenity applied to criminal statutes, [citation], it is not sufficient that the school 'own' the property. Rather, the property must 'comprise' the school. The two terms are not synonymous." *Stamps*, 620 So. 2d at 1033.

We believe that the *Stamps* court assumed that a remote overflow parking lot was not part of the school at issue. Here, by contrast, the parking lot *was* part of the immediate grounds of the field house, a part of the high school.

¶ 25    In *Peterson*, the issue was whether the defendant had delivered a controlled substance " 'within one thousand feet of the real property comprising a public or private elementary or secondary school.' " *Peterson*, 490 N.W.2d at 54 (quoting Iowa Code § 204.401A (1991). The evidence showed that "the distance between the parking lot where the drugs were delivered and the closest corner of the classroom building was 1232 feet." *Peterson*, 490 N.W.2d at 54. However, the "distance between the parking lot and the nearest point of the land owned by the school district surrounding and contiguous to the school buildings was approximately 138 feet." *Peterson*, 490 N.W.2d at 54. The *Peterson* court held that the phrase " 'real property comprising a school' [is]

commonly understood to include not only the school buildings but also the contiguous land surrounding the buildings." *Peterson*, 490 N.W.2d at 55. Thus, a drug delivery within 1000 feet of the land's edge fell within the statute. *Peterson*, 490 N.W.2d at 55. Here, the parking area at issue was contiguous to a school building—the field house—so *Peterson*, contrary to defendant's reading, is consistent with our holding here.

¶ 26                                    III. CONCLUSION

¶ 27    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 28    Affirmed.

**No. 2-19-0981**

| | |
|---|---|
| **Cite as:** | *People v. Lowe*, 2022 IL App (2d) 190981 |
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 18-CF-2389; the Hon. David P. Kliment, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Tomas G. Gonzalez, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, John G. Barrett, and Lawrence M. Bauer, of State's Attorneys Appellate Prosecutor's Office, of counsel, and Hunter Gilbertson, law school graduate), for the People. |